IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL CONSTRUCTION PRODUCTS LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>CATERPILLAR INC., KOMATSU AMERICA CORP., ASSOCIATED AUCTION SERVICES, LLC d/b/a CAT AUCTION SERVICES, RING POWER CORPORATION, ZIEGLER INC., and THOMPSON TRACTOR COMPANY, INC.<br><br>*Defendants*. | Civ. No. 15-108-RGA |

**MEMORANDUM**

Plaintiff International Construction Products LLC ("ICP") asserts antitrust and state law claims against the Defendants, who can be grouped into three categories: (1) the "Manufacturing Defendants" comprised of Caterpillar Inc. and Komatsu America Corp.; (2) the "Dealer Defendants" comprised of Ziegler Inc., Thompson Tractor Company, Inc., and Ring Power Corporation; and (3) Associated Auction Services LLC, an online marketplace for used heavy construction equipment. (D.I. 162).

On October 10, 2019, the court issued an opinion and order that, among other things, granted a motion to dismiss the Dealer Defendants for lack of personal jurisdiction. (D.I. 242; D.I. 238 at 23). In response, ICP filed two motions which I now address: (i) a motion for partial reargument which is really a motion to transfer the Dealer Defendants to the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 1631; and (ii) a motion to transfer the Manufacturing Defendants and Associated Auction Services to the same Florida court pursuant to 28 U.S.C. § 1404. (D.I. 242; D.I. 244). Associated Auction Services, however, is no longer a

1

party to this case. In the same October 10, 2019 opinion, the court dismissed the antitrust claims asserted against Associated Auction Services with prejudice (D.I. 238 at 15), and in a second opinion, issued today, the court dismissed the state law claims asserted against Associated Auction Services with prejudice. Accordingly, the portion of the motion seeking transfer of Associated Auction Services (D.I. 244) is moot. This leaves for the court to decide whether to transfer the Dealer Defendants and the Manufacturing Defendants. For the reasons set forth below, the motion for reargument (D.I. 242) is granted, and the motion to transfer (D.I. 244) is denied.

## I. STANDARD OF REVIEW

### A. Motion for Reargument

A motion for reargument under Local Rule 7.1.5 is the "functional equivalent" of a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990). A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates: (1) a change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). ICP argues that reconsideration is warranted to prevent manifest injustice, because any complaint filed in Florida is likely to face a statute of limitations challenge from Defendants. (D.I. 243 at 3). ICP can avoid this challenge if the claims against the Dealer Defendants were transferred instead of dismissed. (*Id.*).

The Third Circuit has made clear that "a district court that lacks personal jurisdiction must at least consider a transfer," and "when a district court does not consider whether transferring the case would be 'in the interests of justice,' we would remand to let it consider whether to transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020); *see Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 81 (3d Cir. 2015) (remanding because the

2

district court failed to consider transfer under § 1631 after dismissing for lack of personal jurisdiction). Thus, the failure to consider transfer earlier was probably a clear error, and, in any event, if I do not consider ICP's request for transfer on a motion for reargument, I am simply delaying what I will inevitably have to consider on a remand after appeal. For these reasons, I will now consider transfer of the claims against the Dealer Defendants under § 1631.

### B. Transfer

ICP has requested transfer of the Dealer Defendants pursuant to § 1631 and transfer of the Manufacturer Defendants pursuant to § 1404(a). Section 1631 is limited to situations where the court lacks "jurisdiction." It states, "whenever a … court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action … to any other such court … in which the action or appeal could have been brought at the time it was filed…." 28 U.S.C. § 1631. Section 1404(a) applies more broadly to transfer for "convenience." Specifically, § 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…." 28 U.S.C. § 1404(a).

Ziegler argues that, under Third Circuit precedent, § 1631 is limited to defects in subject matter jurisdiction only. (D.I. 251 at 1). It cannot be used to transfer where the court lacks personal jurisdiction, which is the defect here. Ziegler cites *In re IMMC Corp.,* where the Court of Appeals stated, "[W]e read § 1631 as intending to permit transfer to remedy a lack of statutory jurisdiction only." 909 F.3d 589, 596 (3d Cir. 2018). The *IMMC* panel described "statutory jurisdiction" as "federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332," which is more commonly referred to as "subject matter jurisdiction." *Id.* The Court contrasted "statutory jurisdiction" with "constitutional jurisdiction," by which it meant "a tribunal's authority under the Constitution to hear a matter." *Id.* *IMMC* did not involve any issue

3

of personal jurisdiction, and does not cite any cases involving personal jurisdiction. In short, *IMMC* was addressing a different issue than the one now before me.

*IMMC*, thus, is not on point. There are Third Circuit cases directly addressing the "personal jurisdiction transfer" issue. *See Danziger*, 948 F.3d at 132 (stating that courts lacking personal jurisdiction must consider transfer pursuant to § 1631); *Chavez v. Dole Food Co.*, 836 F.3d 205, 224 (3d Cir. 2016) (stating that "the statutory provision applicable in these circumstances [where the court lacks personal jurisdiction] is … 28 U.S.C. § 1631"); *Corigliano.*, 611 F. App'x at 81 (remanding because the court failed to consider transfer under § 1631 after dismissing for lack of personal jurisdiction); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009) (relying on § 1631 to determine if transfer is appropriate after dismissal for lack of personal jurisdiction); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n. 9 (3d Cir. 2002) (stating that § 1631 gives courts authority to transfer where it lacks personal jurisdiction over a party). Thus, the Court has authority to transfer under § 1631 even though the dismissal was for lack of personal jurisdiction.

## II. DISCUSSION

To transfer this action under either § 1631 or § 1404(a), ICP must demonstrate that: (i) this action could have been brought in the Northern District of Florida; and (ii) transfer would serve the interests of justice. 28 U.S.C. § 1631; 28 U.S.C. § 1404(a). Before analyzing either prong, the court must first resolve an issue left open in the October 10, 2019 opinion.

ICP contends that Florida has personal jurisdiction over the Defendants based on the co-conspirator doctrine, and the conspiracy on which ICP relies for personal jurisdiction is the same conspiracy ICP alleged in support of its antitrust claims. (D.I. 243 at 9-10; D.I. 245 at 4). The October 2019 opinion, however, never determined whether Ziegler had engaged in parallel conduct, which would have been circumstantial evidence of an agreement to participate in the

antitrust conspiracy. (D.I. 238 at 14). At the time, there was no need to resolve the issue, because the court was dismissing Ziegler for lack of personal jurisdiction regardless. Because ICP is relying on the conspiracy theory of jurisdiction to show that this action could have been brought in Florida, I will first address whether Ziegler participated in the antitrust conspiracy, and then address the requirements for transfer.

### A. Ziegler

In the October 2019 opinion, I concluded that, under § 1 of the Sherman Act, ICP adequately pled an antitrust conspiracy as to the Manufacturer Defendants, Ring Power, and Thompson Tractor, based on circumstantial evidence of parallel conduct. (*See* D.I. 238 at 13-15). Specifically, each of those defendants had made similar threats to boycott IronPlanet if it continued to do business with ICP and these threats were made "within days" of April 3, 2014.[1] (*Id.*). I must now determine whether a purported threat made on March 18, 2014 can be properly attributed to Ziegler, and whether Ziegler's purported threat was delivered close enough in time to the other threats to qualify as parallel conduct. Each of these issues are addressed in turn.

#### 1. Attribution of the Threat

On March 13, 2014, Greg Owens, the Chairman and CEO of IronPlanet, sent William Hoeft "an offer from my Board of Directors" with terms for a merger of IronPlanet and Associated Auction Services. (D.I. 195-1, Ex. 1). On March 18, Hoeft responded. In the first paragraph, Hoeft said that the companies remain far apart on value, and that he has forwarded Owens' email

---

[1] Thompson Tractor argues that the Court improperly relied on paragraph 109 in holding that it engaged in parallel conduct. (D.I. 249 at 11). But I did not rely on paragraph 109 in drawing this conclusion. Instead, I relied on paragraph 107 and the document incorporated by reference in that paragraph, which can be found at D.I. 195-1, Ex. 3. As a shorthand, I cited to Plaintiff's Answering Brief on the Motion to Dismiss, which puts these two cites together. (*See* D.I. 238 (opinion) at 14 which cites D.I. 200 at 14 (Plaintiff's Answering Brief) which cites D.I. 162 (second amended complaint) at ¶ 107 and D.I. 195-1, Ex. 3 (document incorporated by reference).

to "our advisors, as well as Gary." (*Id.*). "Advisors" refers to Green Holcomb, the financial advisor for Associated Auction Services in the merger negotiations. (*Id.*; D.I. 195-1, Ex. 2). "Gary" refers to Gary Trettel, the CEO of Associated Auction Services. (D.I. 162 ¶ 109). Hoeft starts the second paragraph with the phrase "on a side note," and then discusses a recent article in Equipment World which highlighted IronPlanet's new relationship with ICP. (D.I. 195-1, Ex. 1). Specifically, Hoeft states: "We would like to better understand that relationship, as we are concerned that Caterpillar and the CAT dealers would have significant concerns about any arrangement where Iron Planet is providing auction services for new equipment for a Caterpillar competitor." (*Id.*). ICP characterizes this sentence as a threat from Ziegler. (D.I. 200 at 10, 15).

For the purposes of a motion to dismiss, two facts make it plausible that this is a threat by Ziegler, as ICP alleges. First, Hoeft's signature block contains only his title for Ziegler. (D.I. 162 ¶ 104; DI 195-1, Ex. 1). Second, and more important, the email transitions from a discussion of the merger terms in the first paragraph to the purported threat in the second paragraph by using the phrase "on a side note." (*Id.*). Construing that phrase in a light most favorable to ICP, Hoeft is no longer acting in his capacity as Chairman of Associated Auction Services when he makes his statement. He is on a "side note" acting in his capacity as Chairman of Ziegler. Accordingly, the threat can be attributed to Ziegler at this stage of the proceedings.

### 2. Temporal Proximity of the Threat

To determine whether Ziegler's March 18 threat was delivered close enough in time to the other threats to qualify as parallel conduct, there appear to be at least two general rules. First, defendants' actions do not have to be simultaneous to be considered parallel. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 429 (4th Cir. 2015) ("[P]arallel conduct need not be exactly simultaneous and identical in order to give rise to an inference of agreement"); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 791 (N.D. Ill. 2017) ("[S]imultaneous action is a not

6

a requirement to demonstrate parallel conduct."); *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 630 (E.D. Pa. 2010) ("Plaintiffs are not required to plead simultaneous price increases …in order to demonstrate parallel conduct."). Instead, parallel conduct requires only that the defendants' actions be "reasonably proximate in time." *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 441 (E.D. Pa. 2018); *In re Chocolate Confectionary Antitrust Litig.*, 999 F. Supp. 2d 777, 787 (M.D. Pa. 2014).

Second, under the right circumstances, conduct separated by months and even years can be reasonably proximate. *See In re Currency Conversion Fee Antitrust Litig.*, 2012 WL 401113, at *5 (S.D.N.Y. Feb. 8, 2012) (finding temporal proximity where defendants adopted mandatory arbitration clauses in 1998, 1999, and 2001, because defendants' adoption of their arbitration clauses "roughly coincided" with their attendance at several meetings where they discussed and compared notes on arbitration clauses); *Tichy v. Hyatt Hotels Corp.*, 76 F. Supp. 3d 821, 826, 828-30 (N.D. Ill. 2019) (finding a threshold showing of parallel conduct because the anti-competitive agreements contained "nearly identical terms" and "were reached within three months of each other").[2]

The threats made by the other Defendants cover a time-period from March 26 to about April 7. (D.I. 162 ¶¶ 107-08, 110, 114; D.I. 195-1, Ex. 1). Ziegler's purported threat on March 18 is eight days apart from the nearest threat and expands the overall time-period to approximately twenty days. Defendants have not provided a persuasive reason as to why this twenty-day time-period should not be considered reasonably proximate at the motion to dismiss stage, particularly

---

[2] *But see Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 516 (8th Cir. 2018) (holding that conduct "lack[ed] temporal proximity" because the terminations were "executed under dissimilar circumstances and separated by six months"); *In re Graphics Processing Units Antitrust Litig*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007) (finding no parallel conduct where product releases were within the same month and one set of releases was three months apart).

when much longer periods have been found to be reasonably proximate. (D.I. 195 at 15-17; D.I. 251 at 6). Accordingly, the second amended complaint adequately alleges parallel conduct by Ziegler that, along with the plus factors already discussed in the October 2019 opinion (*see* D.I. 238 at 14-15), is circumstantial evidence that Ziegler participated in the antitrust conspiracy to boycott IronPlanet if it continued to do business with ICP.

### B. Transfer

So that all the claims against all the Defendants can be heard in the same court, ICP has requested transfer of the Dealer Defendants pursuant to § 1631 and transfer of the Manufacturer Defendants pursuant to § 1404(a). Because both statutes use essentially the same standards, and any differences are not relevant to my reasoning, both requests for transfer can be considered simultaneously. Accordingly, the court will first address whether the action could have been brought in the Northern District of Florida and, second, address whether transfer would serve the interests of justice.

#### 1. Where this Action Could Have Been Brought

To transfer this action to Florida, ICP as the party seeking transfer must show that Florida has personal jurisdiction over each of the Defendants. *D'Jamoos*, 566 F.3d at 109 (stating that transfer under § 1631 requires a prima facie showing that the other district could exercise personal jurisdiction over the defendant); *Smart Audio Tech., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 728 (D. Del. 2012) (stating the same for § 1404(a)).

There is no dispute that Florida has general jurisdiction over Ring Power, because Ring Power is incorporated under the laws of the State of Florida. D.I. 246 at ¶ 12; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For all the other Defendants, which are non-residents, ICP asserts that there is specific personal jurisdiction in Florida based on

Florida's co-conspirator doctrine.[3] (D.I. 243 at 10; D.I. 245 at 10). "Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009).

The court has already concluded that ICP adequately alleges that the Dealer Defendants and Manufacturer Defendants were members of an antitrust conspiracy. (*See* D.I. 238 at 13-15 and *supra* Section II(A)). In addition, the second amended complaint alleges that one of the co-conspirators, Ring Power, committed overt acts in Florida in furtherance of the conspiracy. Specifically, Ring Power delivered threats to IronPlanet from Florida on April 3, 2014. (D.I. 162 ¶ 108). Accordingly, ICP sufficiently establishes a prima facie case of jurisdiction in Florida over the Manufacturer Defendants and the Dealer Defendants based on an alleged conspiracy.

Defendants argue that the conspiracy theory of jurisdiction is no longer viable after the United States Supreme Court decided *BMS* and *Walden*. (D.I. 252 at 6; D.I. 253 at 2-5). But this argument is unpersuasive. In *BMS*, plaintiffs sued a pharmaceutical company in California for a variety of state-law claims based on injuries allegedly caused by the company's drug. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1777 (2017). The Supreme Court held that it was error to find specific personal jurisdiction in California based on the defendant's "wide ranging" contacts with the state when there was no connection between those contacts and the

---

[3] Thompson Tractor is an Alabama corporation with a principal place of business in Alabama. (D.I. 162 ¶ 13). Ziegler is a Minnesota corporation with its principal place of business in Minnesota. (*Id*. at ¶ 11). Caterpillar is a Delaware corporation with its principal place of business in Illinois. (*Id*. at ¶ 8). Komatsu is a Georgia corporation with its principal place of business in Illinois. (*Id*. at ¶ 9).

specific claims at issue. *BMS*, 137 S. Ct. at 1778-79, 1781. In *Walden*, plaintiffs sued a Georgia police officer in their home state of Nevada for a civil asset forfeiture that occurred while the plaintiffs were traveling through Georgia. *Walden v. Fiore*, 571 U.S. 277, 279-81 (2014). The Supreme Court held that it was error for the courts to find specific personal jurisdiction by shifting the analysis from the defendant's contacts with Nevada to his contacts with plaintiffs and his knowledge of plaintiffs' connections to Nevada. *Id*. at 289.

Neither case, however, directly addressed the conspiracy theory of jurisdiction and neither case established a principle of specific personal jurisdiction that cannot be reconciled with the conspiracy theory of jurisdiction. *See United Healthcare Serv., Inc. v. Cephalon, Inc.*, 2018 WL 878766, at *5 (E.D. Pa. Feb. 13, 2018) ("*Walden* did not touch on the co-conspirator jurisdiction theory" and "did not undermine the basis for co-conspirator jurisdiction"). Thus, numerous cases in Florida decided after *Walden* have continued to find personal jurisdiction over defendants based on the conspiracy theory of jurisdiction. *See Tavakoli v. Doronin*, 2019 WL 1242669, at *9 & 11 (S.D. Fla. Mar. 18, 2019); *Landmark Bank, N.A. v. Cmty. Choice Fin., Inc.*, 2017 WL 4310754, at *12 (S.D. Fla. Sept. 28, 2017); *Universal Physician Serv., LLC v. Del Zotto*, 2017 WL 11016112, at *5 (M.D. Fla. Mar. 2, 2017).

### 2. Interests of Justice

Transfer of the Dealer Defendants would serve the interests of justice, because this court has already concluded that ICP has adequately alleged an antitrust conspiracy as to the Dealer Defendants, but Delaware does not have personal jurisdiction over them, and a statute of limitation may bar ICP's claims if, instead of transfer, ICP were forced to refile its claims in Florida. *See Greco v. SubGallagher Inv. Trust*, 2020 WL 4371841, at *12 (E.D. Pa. July 29, 2020) (finding interests of justice favor transfer under § 1631 because the court lacked personal jurisdiction over defendants); *Mcllwain, LLC v. Berman*, 2018 WL 2357745, at *8 (D.N.J. May 24, 2018) (finding

interests of justice favor transfer under § 1631 "because otherwise there may be a statute-of-limitations bar on [plaintiff]'s claims").

Transfer of the Manufacturing Defendants, however, would not serve the interests of justice. ICP initially chose to sue the Manufacturing Defendants in Delaware and has proceeded to litigate this case in Delaware for over five years. During that time, ICP has filed four complaints, the court has decided over twenty substantive motions, held at least three hearings, issued at least five memorandum opinions, and resolved at least one discovery dispute. In short, the court has already invested considerable time and resources into managing a case that is not even near the beginning of the end, but is, I hope, at the end of the beginning.[4] The Manufacturer Defendants have likewise invested considerable resources litigating this case in Delaware, including by retaining Delaware counsel that has engaged in multiple meet and confers, represented the Manufacturer Defendants in hearings before the court, and overseen the production of discovery. Because the Manufacturer Defendants are Delaware corporations, there is no dispute that the court can exercise personal jurisdiction over them. For all these reasons, the court concludes that it would not serve the interests of justice to transfer the Manufacturer Defendants to Florida. *See Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 34-35 (D.D.C. 2013) ("Where a Court has gained knowledge and familiarity with the facts, the interests of justice and concerns of efficiency militate in favor of retaining the suit"); *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1164 (E.D. Cal. 2005) (concluding that "it would be unfair in the extreme" and "forum-shopping at its most wasteful" to allow a party to transfer the case after two years of discovery and motion practice).

---

[4] It seems as though the litigation is going to take longer than Churchill's war did.

ICP argues that it would not be in the interests of justice to split this case between two separate jurisdictions. (D.I. 245 at 6). But both § 1631 and § 1404(a) permit the transfer of less than all the defendants to another jurisdiction. *See D'Jamoos*, 566 F.3d at 110 ("[W]e have interpreted section 1631 to permit the transfer of all or only part of an action."); *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999) ("Nothing within § 1404 prohibits a court from severing claims against some defendants from those against others and transferring the severed claims"). In addition, this case proceeded for several years before the Dealer Defendants were added, and the Dealer Defendants were then dismissed for lack of personal jurisdiction. Thus, I see no impediment to severing and transferring only the Dealer Defendants.

### III. CONCLUSION

For the foregoing reasons, the Motion for Reargument (D.I. 242) is granted, and the claims against the Dealer Defendants are transferred to the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 1631. The Motion to Transfer pursuant to 28 U.S.C. § 1404(a) (D.I. 244) is denied as to Caterpillar and Komatsu and dismissed as moot as to Associated Auction Services.

An appropriate order will be entered.


Dated: August 10, 2020               /s/ Richard G. Andrews
                                     UNITED STATES DISTRICT JUDGE