# EXHIBIT 16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTERNATIONAL CONSTRUCTION
PRODUCTS LLC,

                                    Plaintiff,

            v.                                    C.A. No. 15-108-RGA

CATERPILLAR INC.,

                                    Defendant.

# **PLAINTIFF'S DRAFT JURY INSTRUCTIONS**

# CONTENTS

1.    GENERAL INSTRUCTIONS ................................................................. 1
   1.1   INTRODUCTION ................................................................................... 1
   1.2   JURORS' DUTIES ................................................................................. 2
   1.3   BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE ........................... 3
2.    EVIDENCE ......................................................................................... 4
   2.1   EVIDENCE DEFINED .......................................................................... 4
   2.2   CONSIDERATION OF EVIDENCE ........................................................ 6
   2.3   CREDIBILITY OF WITNESSES ............................................................ 7
   2.4   EXPERT WITNESSES .......................................................................... 8
   2.5   LAY OPINION TESTIMONY ................................................................. 9
   2.6   DEPOSTIONS AS SUBSTANCANCE EVIDENCE ................................. 10
   2.7   DEMONSTRATIVE EXHIBITS ............................................................ 11
3.    THE PARTIES AND THEIR CONTENTIONS ................................... 12
   3.1   SUMMARY OF CONTENTIONS ....................................................... 12
   3.2   STIPULATIONS OF FACT ................................................................. 13
4.    GENERAL PRINCIPLES .................................................................. 15
   4.1   GENERAL PRINCIPLES – PARTIES NOT NAMED AS DEFENDANTS .............. 16
   4.2   GENERAL PRINCIPLES – CORPORATATIONS ................................. 17
5.    ICP'S ANTITRUST CLAIM .............................................................. 18
   5.1   THE PURPOSE OF THE ANTITRUST LAWS ..................................... 18
   5.2   ICP'S ANTITRUST CLAIM – OVERVIEW ......................................... 19
   5.3   ICP'S ANTITRUST CLAIM – PER SE V. RULE OF REASON ............... 20
   5.4   ICP'S ANTITRUST CLAIM – ELEMENTS – PER SE STANDARD ....... 21
      5.4.1   PER SE STANDARD – AN AGREEMENT OR CONSPIRACY ....... 22
      5.4.2   PER SE ELEMENTS – COMPETITORS ....................................... 28
      5.4.3   PER SE ELEMENTS – ANTITRUST INJURY ............................. 29
   5.5   ICP'S ANTITRUST CLAIM – RULE OF REASON – ELEMENTS ......... 34
      5.5.1   RULE OF REASON – MARKET DEFINTION .............................. 35
      5.5.1   RULE OF REASON – AN AGREEMENT OR CONSPIRACY ........ 37
      5.5.2   RULE OF REASON – AN UNREASONABLE RESTRAINT OF TRADE ....... 38
      5.5.3   RULE OF REASON – ANTITRUST INJURY ............................... 42

**6.   ICP'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM ............... 43**

   6.1   ICP'S TORTIOUS INTERFERENCE CLAIM – OVERVIEW ................................... 43

   6.2   ICP'S TORTIOUS INTERFERENCE CLAIM – ELEMENTS ................................... 44

      6.2.1   TORTIOUS INTERFERENCE WITH CONTRACT – INTENT TO INDUCE
      BREACH ......................................................................................................................... 45

      6.2.2   TORTIOUS INTERFERENCE WITH CONTRACT – ACTUAL INDUCEMENT
      OF BREACH ................................................................................................................... 46

**7.   DAMAGES ....................................................................................................... 47**

   7.1   ANTITRUST DAMAGES – GENERALLY ............................................................. 47

      7.1.1   ANTITRUST DAMAGES – CALCULATING DAMAGES ............................... 48

      7.1.2   ANTITRUST DAMAGES – FACTORS TO CONSIDER ................................... 49

      7.1.3   ANTITRUST DAMAGES – GOING CONCERN VALUE OR GOODWILL ..... 50

   7.2   TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – GENERALLY ... 52

      7.2.1   TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES –
      COMPENSATORY DAMAGES ................................................................................... 53

      7.2.2   TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – PUNITIVE
      DAMAGES ..................................................................................................................... 54

**8.   DELIBERATION AND VERDICT ................................................................ 55**

   8.1   DELIBERATION AND VERDICT – INTRODUCTION ........................................... 55

   8.2   UNANIMOUS VERDICT ......................................................................................... 56

   8.3   DUTY TO DELIBERATE ......................................................................................... 57

   8.4   SOCIAL MEDIA ....................................................................................................... 58

   8.5   COURT HAS NO OPINION ..................................................................................... 59

## 1.     <u>GENERAL INSTRUCTIONS</u>

### 1.1     INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Please listen very carefully to everything I say.  In following my instructions, you must follow all of them and not single out some and ignore others.  They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.[1]

---

[1]     Jury Instructions in *Basf Corp* v. *Ingevity Corp*. 18-1391-RGA, (D. Del., 2021).

## 1.2    JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.[2]

---

[2]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.*, 18-1391-RGA, (D. Del., 2021).

### 1.3    BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  ICP has the burden of proving its claims and the amount of damages, if any, by what is called a "preponderance of the evidence."  As jurors, you will hear this term a lot, so it is important you understand it.

A preponderance of the evidence means that ICP has to provide evidence which, when considered in light of all the facts, leads you to believe that what ICP alleges is more likely true than not.  To put it differently, if you were to put ICP's and Caterpillar's evidence on the opposite sides of a scale, the evidence supporting ICP's claims would have to make the scales tip slightly on ICP's side.  If the scale is evenly balanced, ICP has not proven the element by a preponderance of the evidence, and you must find against ICP.

If ICP tips the scale slightly in its favor and carries its burden, your verdict must be for ICP.  If ICP fails to meet this burden, your verdict must be for Caterpillar.[3]

---

[3]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.*, 18-1391-RGA, (D. Del., 2021).

2. **EVIDENCE**

2.1    **EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that was presented to you, and the exhibits that I allowed into evidence. Nothing else is evidence.

The lawyers' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. What they said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The lawyers' questions and objections are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it. My legal rulings are not evidence. My comments and questions are not evidence.

Testimony that was excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered. During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness

4

might have said or what an exhibit might have shown.  These things are not evidence, and you are

bound by your oath not to let them influence your decision in any way.

Anything you may have seen or heard when the court was not in session is not evidence.

You are to decide the case solely on the evidence received at the trial.

Make your decision based only on the evidence, as I have defined it here, and nothing else.[4]

---

[4]    From Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021); *In re Capacitors Antitrust Litigation,* 14-cv-03264-JD (N.D. Cal. 2021).

## 2.2    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[5]

---

[5]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 2.3    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses.[6]

---

[6]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 2.4    EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. The fact that an expert states a fact or an opinion does not mean that the testimony is correct or supported by the factual evidence. Expert testimony is a guide to interpreting the evidence. What the facts are is for you to decide.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.[7]

---

[7]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.,* 18-1391-RGA, (D. Del., 2021).

## 2.5    LAY OPINION TESTIMONY

Witnesses who were not testifying as experts may have given their opinions during the trial.  The fact that a witness has stated an opinion does not mean you are required to accept it.  You may give the opinion whatever weight you think appropriate.  Consider the extent of the witness's opportunity to perceive the matters on which his or her opinion is based, the reasons the witness gave for any opinion, and the facts or information on which the witness relied in forming that opinion.  You must decide whether information on which the witness relied was true and accurate.  You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

You should remember that lay witnesses may not testify to hypothetical situations or respond to hypothetical questions, and you should therefore disregard any opinions relating to hypotheticals.[8]

---

[8]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

**2.6     DEPOSTIONS AS SUBSTANTANCE EVIDENCE**

Deposition testimony is entitled to the same consideration and is to be judged, as much as possible, in the same way as if the witness testified in person here in the courtroom.[9]

---

[9]     Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 2.7    DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room for your deliberations.

The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses.  These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.[10]

---

[10]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

3.    **THE PARTIES AND THEIR CONTENTIONS**

3.1    **SUMMARY OF CONTENTIONS**

I will give you a brief summary of the positions of the parties.

The plaintiff in this case—the party that is asserting the claims—is a company called International Construction Products, which I will refer to as "ICP" or the "Plaintiff."  The defendant in this case is a company called Caterpillar Inc., which I will refer to as "Caterpillar" or the "Defendant."  Both ICP and Caterpillar are or were involved in the business of selling "heavy construction equipment."  That is a term that refers to the large vehicles that you may have seen at construction sites, like wheel loaders and excavators, that are used for various earthmoving tasks.

ICP alleges that Caterpillar violated Section 1 of the Sherman Act by conspiring with others, including IronPlanet, Ring Power Corporation ("Ring Power") Thompson Tractor Company ("Thompson Tractor") and Ziegler, Inc. ("Ziegler") to restrain trade by causing IronPlanet to terminate a contract called the "Hosted Store Agreement" between ICP and IronPlanet, and that these actions constituted a group boycott.

ICP also claims that ICP claims that Caterpillar tortiously interfered with the Hosted Store Agreement between ICP and IronPlanet.  ICP alleges that Caterpillar interfered with the Hosted Store Agreement by wrongfully causing IronPlanet to terminate that agreement.

ICP claims that it should be awarded money damages from Caterpillar as a result of Caterpillar's conduct.

Caterpillar denies that it has violated the antitrust laws or intentionally interfered with ICP's contract with IronPlanet.

### 3.2  STIPULATIONS OF FACT

The parties have agreed to certain facts that I will now read to you.  You must treat these facts as having been already proven:[11]

1.   International Construction Products LLC, the plaintiff, is based in Asheville, North Carolina.  International Construction Products is often referred to as ICP.

2.   ICP was founded in 2013 by Tim Frank.

3.   Caterpillar is a manufacturer of construction and mining equipment, diesel and natural gas engines, industrial gas turbines and diesel-electric locomotives.

4.   Caterpillar sells its new heavy construction equipment products through an established network of independently owned dealers.

5.   In 2014, Ring Power Corporation ("Ring Power") was an independently owned and operated Caterpillar dealer, with its headquarters in St. Augustine, Florida, and locations in north and central Florida.

6.   Thompson Tractor Company ("Thompson") was also an independently owned and operated Caterpillar dealer serving Alabama and the Florida Panhandle.

7.   Neither Ring Power nor Thompson is a defendant in this action.

8.   In 2008, five Caterpillar dealers formed an auction service for customers and dealers that wanted to dispose of used construction equipment via public auction.  The official name of the company was Associated Auction Services, LLC ("AAS").  In 2012, Caterpillar became a co-owner of AAS and licensed the "Cat" name to AAS to allow it to do business under the name Cat Auction Services ("CAS").

9.   In 2014, Caterpillar was a shareholder of AAS/Cat Auction Services, with 29.8%.

---

[11] *See* Joint Statement of Uncontested Facts, Proposed Pre-Trial Order at 2.

10.     IronPlanet was an online marketplace that was founded in 1999 for the purpose of

auctioning used construction, mining, and agriculture equipment on an online

auction platform.

11.     As of 2014, Caterpillar owned a 9.45% interest in IronPlanet.

12.     In December 2014, IronPlanet and Cat Auction Services announced that they had

agreed to merge.

13.     IronPlanet and Cat Auction Services completed their merger in April 2015.

4.     **<u>GENERAL PRINCIPLES</u>**

Because ICP's claims have certain overlapping concepts, I am going to now instruct you on concepts that may appear as "general principles" across the claims so that you have all the information you need in one place.[12]

---

[12]     Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 4.1     GENERAL PRINCIPLES – PARTIES NOT NAMED AS DEFENDANTS

It is important to remember that this is an action between ICP and Caterpillar:  nobody else.  As a result, your deliberations should be focused on ICP's allegations towards Caterpillar and Caterpillar's responses.

It does not matter that ICP did not sue or join as a defendant someone who may have participated in causing the injury ICP claims.  This is true even if it appears that the role of the unnamed participant may have been greater than that of Caterpillar.[13]

---

[13]     4 Modern Federal Jury Instructions – Civil - Antitrust ¶ 79.02[2] (2023).

## 4.2     GENERAL PRINCIPLES – CORPORATATIONS

Caterpillar is a corporation and ICP is what's called a limited liability company, or "LLC." All parties are equal before the law and a corporation or LLC is entitled to the same fair and conscientious consideration by you as any party or person.

Under the law, a corporation is considered to be a person.  A corporations "acts" through its employees, agents, directors, or officers.  A corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of authority.  An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.  Every act of any director, or officer, or employee, or other agent, on behalf of, or in the name of a corporation, if done within the scope of the person's authority, is by law the act of the corporation itself.[14]

---

[14]    ABA Model Jury Instructions in Civil Antitrust Cases A-19; *In re Capacitors Antitrust Litigation,* 14-cv-03264-JD (N.D. Cal. 2021); 3A Fed. Jury Prac. & Instr. § 150:2 (6th ed.).

5.    **ICP'S ANTITRUST CLAIM**

    5.1    **THE PURPOSE OF THE ANTITRUST LAWS**

    The primary purpose of the antitrust laws is to preserve and promote our system of free and open competition and to secure everyone an equal opportunity to engage in business, trade, and commerce, by preventing unreasonable restraints or monopolization of any business or industry so that consumers may receive better goods and services at lower cost. These laws rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

    A desire to increase market share or even to drive a competitor out of business through vigorous competition on the merits is not unlawful. However, any unreasonable interference, by contract, or combination, or conspiracy, with the ordinary, usual, and freely-competitive pricing or distribution system of the open market constitutes an unreasonable restraint of trade, and is a violation of the antitrust laws.[15]

---

[15]    From Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021);. O'Malley, et al., 3A Federal Jury Practice and Instructions, 150 Antitrust—Private Action.

## 5.2    ICP'S ANTITRUST CLAIM – OVERVIEW

I will now instruct you regarding ICP's antitrust claim.

ICP alleges that Caterpillar violated Section 1 of the Sherman Act by conspiring with Ring Power, Thompson Tractor, IronPlanet and/or Ziegler to restrain trade by causing IronPlanet to terminate its Hosted Store Agreement with ICP.

ICP claims that Caterpillar's actions constituted a "group boycott" that operated as a unreasonable restraint of trade and resulted in an adverse effect on competition in violation of Section 1 of the Sherman Act.  Section 1 of the Sherman Act prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. [16]

The key term here is *unreasonably restrains trade*:  not every contract, combination or conspiracy between competitors violates Section 1 of the Sherman Act.  The Sherman Act only prohibits contracts, combinations, and conspiracies that unreasonably have a negative impact on competition. [17]

---

[16] ABA Model Jury Instructions in Civil Antitrust Cases B-2.
[17] ABA Model Jury Instructions in Civil Antitrust Cases C-3.

### 5.3    ICP'S ANTITRUST CLAIM – PER SE V. RULE OF REASON

There are two tests that are used to determine whether a particular contract, combination or conspiracy unreasonably restrains trade in violation of Section 1 of the Sherman Act.

The first test is the called the "*per se*" rule.

The second test is called the "*rule of reason*."

Here, ICP claims that Caterpillar's alleged group boycott was a *per se* unlawful violation of Section 1 of the Sherman Act. In the alternative, ICP alleges that Caterpillar's actions will be found unlawful under the *rule of reason*.

As I will explain later, some conduct so clearly violates Section 1 of the Sherman Act that it is called *per se* unlawful. Conduct that is *per se* unlawful is clearly illegal, meaning that you do not need to consider whether conduct was reasonable under the circumstances or whether the conduct harmed competition. This is because *per se* illegal conduct almost *always* unreasonably harms competition. I will instruct you how to determine whether Caterpillar's conduct is *per se* unlawful in more detail later.

If you find that Caterpillar's conduct was not *per se* unlawful, it is then your job to determine whether the challenged conduct was unreasonable using the second test I mentioned: the *rule of reason.* I will instruct you how to determine whether Caterpillar's conduct is unlawful under the *rule of reason* in more detail later.

For now, you should know that you should begin your consideration of ICP's antitrust claim focused on the *per se* unlawful standard. This is because if you find in favor of ICP on the *per se* test, there is no need to examine Caterpillar's conduct under the *rule of reason*. You should only move on to the *rule of reason* if you find that ICP has not met the *per se* standard.[18]

---

[18]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.*, 18-1391-RGA, (D. Del., 2021); 4 Modern Federal Jury Instructions – Civil - Antitrust ¶ 79.02[2] (2023).

**5.4    ICP'S ANTITRUST CLAIM – ELEMENTS – PER SE STANDARD**

A person or business has the right to deal, or refuse to deal, with whomever it likes, as long as it makes that decision on its own. The Sherman Act, however, prohibits two or more persons or businesses from agreeing with one another not to deal with another where certain circumstances are shown to exist, a situation sometimes referred to as a "group boycott."

To prevail on its claim that Caterpillar's conduct was a *per se* illegal group boycott, ICP each of the following elements by a preponderance of the evidence:

1. Caterpillar and one or more other persons or businesses refused to deal with ICP by entering into an agreement or conspiracy to disadvantage ICP as a competitor in the new heavy construction equipment market;

2. the refusal to deal was pursuant to an agreement between Caterpillar and one or more other persons or businesses;

3. at least two of the parties to the agreement or conspiracy are direct competitors;

4. the refusal to deal disadvantaged ICP by denying ICP access to a supply of product, a facility, a market, or a service necessary for ICP to compete effectively;

5. the refusal to deal occurred in or affected interstate commerce; and

6. ICP was injured in its business or property because of the refusal to deal.

If you find that ICP has proven each of these elements by a preponderance of the evidence, then you must find for ICP and against Caterpillar on this claim.

If you find that ICP has not done so, then you must consider whether ICP has proven, by a preponderance of the evidence, that Caterpillar's conduct is unlawful under the "*rule of reason*" test. [19]  I will now explain in more detail the elements I just described.

---

[19]    ABA Model Jury Instructions in Civil Antitrust Cases C-44; Jury Instructions in *Basf Corp* v. *Ingevity Corp.*, 18-1391-RGA, (D. Del., 2021); 4 Modern Federal Jury Instructions – Civil - Antitrust ¶ 79.02[2] (2023).

### 5.4.1   PER SE STANDARD – AN AGREEMENT OR CONSPIRACY

As I have just told you, the first element that ICP must prove is that the Caterpillar entered into an unlawful agreement or conspiracy.  This is important because the part of the Sherman Act we are concerned with outlaws certain joint activities by competitors, but not actions taken by a single firm or corporation.[20]

The word "conspiracy" as used in the Sherman Act, means "together with" someone else. A conspiracy is formed when two or more people or corporations join together to accomplish some unlawful purpose by acting together.  The essence of a conspiracy is an agreement between two or more people or corporations to violate or disregard the law.

To satisfy the "unlawful agreement or conspiracy" element, ICP must prove, by a preponderance of the evidence, that:

1.  The alleged conspiracy existed; and

2.  That Caterpillar knowingly became a member of that conspiracy.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.[21]

---

[20] 4 Modern Federal Jury Instructions – Civil - Antitrust ¶ 79.02[2] (2023).
[21] ABA Model Jury Instructions in Civil Antitrust Cases A-13.

### 5.4.1.1     PER SE STANDARD – AN AGREEMENT OR CONSPIRACY

The following instructions will assist you in determining whether ICP has proven, by a preponderance of the evidence, that an alleged conspiracy existed.

### 5.4.1.1.1    PER SE ELEMENTS – AN AGREEMENT OR CONSPIRACY – EVIDENCE TO PROVE THE CONSPIRACY

In order to prove a conspiracy existed, it is not necessary for ICP to present direct proof of an oral or written agreement.  Very often in cases like this, such evidence is not available, and the agreement itself may be entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy.  The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose.[22]

To prove a conspiracy existed, the evidence must show that two or more people or corporations came to an agreement or understanding among themselves to accomplish a common purpose or commit to a common scheme.  You may find that an agreement or conspiracy existed from Caterpillar's course of dealing, through the words it exchanged, or from its acts alone.[23]

---

[22]    ABA Model Jury Instructions in Civil Antitrust Cases A-13.
[23]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 5.4.1.1.2   PER SE ELEMENTS – AN AGREEMENT OR CONSPIRACY – PARALLEL CONDUCT

ICP contends that Caterpillar and the alleged other members of the conspiracy—IronPlanet, Ring Power, Thompson Tractor and Ziegler—engaged in conduct that, when considered with other evidence, is sufficient to show a conspiracy existed.

Mere similarity of conduct among various parties, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy.  For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas.   If the parties acted similarly but totally independently of one another, without any agreement or understanding between two or more of them, then there would not be a conspiracy.

You must decide whether Caterpillar, IronPlanet, Ring Power, Thompson Tractor and/or Ziegler's similar conduct was, more probably than not, the result of an agreement or understanding among them.   In doing so, you may consider evidence of similar conduct along with other evidence.  You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely than not that Caterpillar had an agreement or understanding with either IronPlanet, Ring Power, Thompson Tractor and/or Ziegler rather than the coincidence of the parties acting independently.[24]

---

[24] ABA Model Jury Instructions in Civil Antitrust Cases A-17.

### 5.4.1.1.3   PER SE ELEMENTS – AN AGREEMENT OR CONSPIRACY – SUCCESS OF THE CONSPIRACY IS NOT REQUIRED

If ICP has proven, by a preponderance of the evidence, that a conspiracy existed and that two or more people or corporations were members, then it is not necessary for ICP to prove that the conspiracy was wholly successful in achieving all of its aims.

All that ICP must show in terms of the actual carrying out of the conspiracy is that one of the conspirators took some concrete action to bring about the aims of the conspiracy. The concrete action to bring about the aims of the conspiracy need not be unlawful in and of itself, nor is it necessary that the action totally accomplish the objective of the conspiracy. The concrete action should, however, be the sort of action that excludes the possibility that Caterpillar acted alone. [25]

---

[25] 4 Modern Federal Jury Instructions - Civil - Antitrust ¶ 79.02[2] (2023).

### 5.4.1.1.1   PER SE ELEMENTS – AN AGREEMENT OR CONSPIRACY – CO-CONSPIRATORS NOT NAMED AS DEFENDANTS

Whether or not ICP has brought or will bring an action against any other parties is irrelevant to your deliberations regarding ICP's claims against Caterpillar.  This is because is not necessary for a ICP to name every person it claims participated in the unlawful agreement or conspiracy as a defendant in this lawsuit.  Under the antitrust laws, ICP may recover against one, some or all of the parties who participated in the alleged conspiracy.

As a result, it does not matter that ICP did not join as a defendant someone who may have participated in causing the injury ICP claims.  This is true even if it appears that the role of the other participant may have been greater than that of Caterpillar.[26]

---

[26]    4 Modern Federal Jury Instructions – Civil, Antitrust ¶ 79.02[2] (2023).

### 5.4.2    PER SE ELEMENTS – COMPETITORS

If you have found that the alleged conspiracy existed, the second factor that ICP must prove by a preponderance of the evidence for the *per se* standard is that least two of the parties to the agreement or conspiracy were competitors.[27]

The term "competitors" as used here means two parties operating at the same level of the market with similar or identical businesses who should, at least in theory, compete with one another.  The key here is that the two parties must compete with *one another*:  ICP is not required to show that the two parties were competitors with ICP or competitors with Caterpillar.

Not all participants in the group boycott must be competitors, and Caterpillar itself does not need to be one of the competitors.  As long as the competitor element is satisfied for at least two parties to the agreement or conspiracy, the *per se* rule can apply even if other participants operate at other levels of the distribution chain.[28]

Here ICP has alleged that Caterpillar and Caterpillar dealers  such as Ring Power, Thompson Tractor, and Ziegler are independent businesses and competitors for the sale of used equipment and that Caterpillar dealers are competitors for the sale of new and used equipment.

---

[27]    *Nw. Wholesale Stationers, Inc*. v. *Pac. Stationery & Printing Co*., 472 U.S. 284, 294, (1985).

[28]    ABA Model Jury Instructions in Civil Antitrust Cases C-44; *Klor's, Inc*. v. *Broadway-Hale Stores*, 359 U.S. 207, 209 (1959) (illegal agreement between appliance retailer and its suppliers to boycott retailer's competitor); United States v. General Motors Corp., 384 U.S. 127 (1966) (conspiracy—involving horizontal and vertical elements resulted in a per se violation); *Rossi* v. *Standard Roofing*, Inc., 156 F.3d 452 (3d Cir. 1998) ("a conspiracy is horizontal in nature when a number of competitor firms agree with each other and at least one of their common suppliers or manufacturers").

### 5.4.3   PER SE ELEMENTS – ANTITRUST INJURY

If you find that ICP has proven the first three elements by a preponderance of the evidence, you must then determine if ICP has suffered an injury to its business or property as a result of Caterpillar's conduct, and, if so, if it is entitled to recover damages from Caterpillar for that injury.

ICP is entitled to recover damages under the antitrust laws for an injury to its business or property if it can establish, by a preponderance of the evidence, that:

1. ICP's business or property was in fact injured as a result of Caterpillar's alleged violation of the antitrust laws;

2. Caterpillar's alleged violation of the antitrust laws was a material cause of ICP's injury; and

3. ICP's injury is an injury of the type that the antitrust laws were intended to prevent.

If ICP can establish by a preponderance of the evidence that it was in fact injured by Caterpillar's conduct, that Caterpillar's conduct was a material cause of ICP's injury, and that Caterpillar's injury was the type that the antitrust laws were intended to prevent, then ICP is entitled to recover damages for the injury to its business or property.  If you find that ICP has not proved these elements, then you should find in favor of Caterpillar on this claim.[29]

---

[29]   ABA Model Jury Instructions in Civil Antitrust Cases A-300; 4 Modern Federal Jury Instructions-Civil ¶ 79.02[5] (2023).

### 5.4.3.1    PER SE ELEMENTS – ANTITRUST INJURY – BUSINESS OR PROPERTY

ICP must establish that the injury it claims to have suffered was an injury to its "business or property."  The term "business" includes any commercial interest or venture, and you are instructed that ICP has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of Caterpillar's alleged antitrust violation.  The term "property" includes anything of value ICP owns or possesses or in which ICP has a protectable legal interest.

You are instructed that ICP has been injured in its "business or property" if you find it has lost money as a result of Caterpillar's alleged antitrust violation.[30]

---

[30]    ABA Model Jury Instructions in Civil Antitrust Cases A-303; Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 5.4.3.2    PER SE ELEMENTS – ANTITRUST INJURY – INJURY IN FACT

Under the first element of the test to see if ICP can establish an injury, ICP must prove, by a preponderance of the evidence, that it was injured as a result of Caterpillar's alleged violation of the antitrust laws.  This is sometimes referred to as "injury in fact."

To show injury in fact, ICP does not have to show the dollar amount of its injury, or how much injury it suffered.  Instead, to satisfy this element of the test, ICP need only prove by a preponderance of the evidence that it suffered some kind of damage flowing from Caterpillar's alleged violation of the antitrust laws.[31]

---

[31]    *Zenith Radio Corp*. v. *Hazeltine Rsch., Inc*., 395 U.S. 100, 114 n.9 (1969) ("inquiry beyond this minimum point goes only to the amount and not the fact of damage"); *Alan's of Atlanta, Inc*. v. *Minolta Corp*., 903 F.2d 1414, 1428 (11th Cir. 1990) (reversing summary judgment where at the "very least the evidence gives rise to a reasonable inference" that illegal conduct caused plaintiff "some harm"); ABA Model Jury Instructions in Civil Antitrust Cases A-300.

### 5.4.3.1     PER SE ELEMENTS – ANTITRUST INJURY – MATERIAL CAUSE

The second element of the test requires ICP to show that Caterpillar's conduct was a "material cause" of its injury.  This means that ICP must prove that some of the damage occurred to it as a result of Caterpillar's alleged antitrust violation, and not some other cause.

To show this, ICP is not required to prove that Caterpillar's alleged antitrust violation was the only cause of its injury or a greater cause of its injury than any other possible cause, and nor need ICP eliminate all other possible causes of injury.  To satisfy this second element, it is enough if ICP has proved by a preponderance of the evidence that the alleged antitrust violation was a substantial cause of its injury.[32]

---

[32]     ABA Model Jury Instructions in Civil Antitrust Cases A-300; Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 5.4.3.1    PER SE ELEMENTS – ANTITRUST INJURY – INJURY OF THE TYPE THE ANTITRUST LAWS WERE DESIGNED TO PREVENT

Finally, for the third element, ICP must establish that its injury is the type of injury that the antitrust laws were designed to prevent. This is sometimes referred to as an "antitrust injury."

Generally speaking, the antitrust laws were designed to prevent harm to competition. As a result, a competitor can show that it has suffered an injury that the antitrust laws were designed prevent by showing that it experienced business losses that resulted from a conspiracy to restrain competition.[33] If ICP's injuries were caused by acts that led to a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then ICP's injuries are antitrust injuries. On the other hand, if ICP's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then ICP's injuries are not antitrust injuries and ICP may not recover damages for those injuries under the antitrust laws.[34]

---

[33] *Lifewatch Servs*. v. *Highmark Inc*., 902 F.3d 323, 342 (3d Cir. 2018) ("the class of plaintiffs capable of satisfying the antitrust injury requirement" includes "consumers and competitors"); *W. Penn Allegheny Health Sys*. v. *UPMC*, 627 F.3d 85, 102 (3d Cir. 2010) (same).

[34] ABA Model Jury Instructions in Civil Antitrust Cases A-300.

### 5.5    ICP'S ANTITRUST CLAIM – RULE OF REASON – ELEMENTS

If you do not find that Caterpillar's conduct was *per se* illegal, you must then consider whether Caterpillar's alleged conduct caused an unreasonable effect on competition under what is called the "*rule of reason*" test.

Under the *rule of reason*, ICP must prove, by a preponderance of the evidence:

1. the existence of an agreement or conspiracy between or among Caterpillar and at least one other separate entity;

2. that the agreement or conspiracy unreasonably restrained trade;

3. that the restraint affected interstate commerce; and

4. that ICP suffered an injury to business or property flowing from the unlawful agreement or conspiracy.[35]

If you find that the evidence is not sufficient to prove any one or more of these elements, then you must find for Caterpillar and against ICP on this claim.  If you find that ICP has proven each of these elements by a preponderance of the evidence, then you must find for ICP and against Caterpillar on this claim.

---

[35]    ABA Model Jury Instructions in Civil Antitrust Cases B-2.

### 5.5.1    RULE OF REASON – MARKET DEFINTION

For *rule of reason* analysis, ICP must prove, by a preponderance of the evidence, the existence of a "relevant product market" in the United States.  The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.

In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test based on the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable so long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant sustained increase in the price of one product would result in a substantial number of consumers switching from that product to another. In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn?  Generally speaking, a small but significant increase in price is approximately a 5% increase in price not due to cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may consider:  (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and the sales of another; (3)

the presence or absence of specialized vendors; (4) the perceptions of either the industry or the public as to whether the products are in separate markets; (5) the views of ICP and Caterpillar regarding which products compete against each other; (6) the existence or absence of different customer groups or distribution channels; (7) disadvantages to using other products that might deter customers from substituting to products outside of the market; and (8) differences in prices for particular products.[36]

Here, ICP contends that the relevant market is the market for new heavy construction equipment in the United States.

---

[36]    ABA Model Jury Instructions in Civil Antitrust Cases A-108, C-5; Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 5.5.1     RULE OF REASON – AN AGREEMENT OR CONSPIRACY

*See* Section 5.4.1 – Agreement or Conspiracy.

### 5.5.2   RULE OF REASON – AN UNREASONABLE RESTRAINT OF TRADE

In determining whether Caterpillar's alleged misconduct resulted in an unreasonable restraint of trade, you must first determine whether ICP has proven that the challenged restraint negatively impacted competition in the relevant market.

If you find that ICP has proven that the challenged restraint negatively impacted competition in the relevant market, then you must consider whether the restraint produced countervailing competitive benefits.  If you find that it did, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal only if you find that the competitive harm substantially outweighs the competitive benefit.[37]

---

[37]    ABA Model Jury Instructions in Civil Antitrust Cases C-8; Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 5.5.2.1    RULE OF REASON – UNREASONABLE RESTRAINT OF TRADE – PROOF OF COMPETITIVE HARM

To prove that the challenged conduct unreasonably restrained competition, ICP first must demonstrate that Caterpillar's alleged agreement negatively impacted competition in the relevant market. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of ICP is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor does not necessarily mean that there has been harm to competition.

A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, more product options, increased output, or higher product quality. If the challenged conduct did not result in higher prices, fewer product choices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable. [38]

ICP can prove that Caterpillar's alleged agreement negatively impacted competition in either of two ways: first, by showing *direct evidence* of harm to competition, and second, by showing evidence of *indirect harm*.

Direct evidence of harm includes evidence of higher prices, reduced output, or lower quality in the market as a whole. If you find that ICP has offered sufficient evidence of *direct harm* to competition, you do not need to consider whether ICP has offered sufficient indirect evidence of harm.

Indirect evidence means that ICP must show that Caterpillar had sufficient market power to cause an negative effect, plus some other evidence that Caterpillar's alleged behavior harmed

---

[38] ABA Model Jury Instructions in Civil Antitrust Cases C-5.

competition.[39]  In determining whether the challenged conduct produced competitive harm, you may consider the following factors:

- the effect of the conduct on prices, output, product quality, and service;

- the purpose and nature of the conduct;

- the nature and structure of the relevant market, both before and after the conduct occurred;

- the number of competitors in the relevant market and the level of competition among them; and

- whether new competitors entered the market, both before and after the conduct occurred.[40]

---

[39]  *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 989 (9th Cir. 2020); Sand, et al., 4 Modern Federal Jury Instructions – Civil – Antitrust - Chapters 79-80.03 (2023); 1 J. Kalinowski, Antitrust Laws and Trade Regulation § 12.02[2] (2d ed. 2017.).

[40]  ABA Model Jury Instructions in Civil Antitrust Cases C-5; Jury Instructions in *Basf Corp* v. *Ingevity Corp.*, 18-1391-RGA, (D. Del. 2021).

### 5.5.2.2    RULE OF REASON – UNREASONABLE RESTRAINT OF TRADE – BALANCING BENEFITS AND HARMS

If you find that ICP has proved that Caterpillar's conduct resulted in substantial harm to competition in a relevant market, then you next must determine whether Caterpillar's conduct benefited competition in other ways.

If you find that Caterpillar has proven that the conduct resulted in competitive benefits, then you also must consider whether the conduct was reasonably necessary to achieve the benefits. If ICP proves that the same benefits could have been readily achieved by other, reasonably available alternative means that would have generated less harm to competition, then they cannot be used to justify the conduct.

If you find that the challenged conduct was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same conduct.

If the competitive harm substantially outweighs the competitive benefits, then the challenged conduct is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged conduct is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor.

ICP bears the burden of proving that the anticompetitive effect of the conduct, if any, substantially outweighs its benefits.[41]

---

[41]    ABA Model Jury Instructions in Civil Antitrust Cases C-8; Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 5.5.3   RULE OF REASON – ANTITRUST INJURY

*See* Section 5.4.3 – Antitrust Injury.

**6.**   **ICP'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM**

**6.1**   **ICP'S TORTIOUS INTERFERENCE CLAIM – OVERVIEW**

The second claim that ICP asserts against Caterpillar is a claim of tortious interference with

contract.

Specifically, ICP claims that Caterpillar interfered with a contract called the "Hosted Store

Agreement" between ICP and IronPlanet. ICP alleges that Caterpillar interfered with the Hosted

Store Agreement by wrongfully causing IronPlanet to terminate that agreement. Caterpillar denies

these allegations.

## 6.2    ICP'S TORTIOUS INTERFERENCE CLAIM – ELEMENTS

To establish its claim against Caterpillar for tortious interference, ICP must prove each of the following elements by a preponderance of the evidence:

1. A valid, enforceable contract existed between ICP and IronPlanet;

2. Caterpillar knew about that contract;

3. Caterpillar intentionally and unjustifiably induced IronPlanet to breach that contract;

4. IronPlanet breached its contract with ICP as a result of Caterpillar's wrongful conduct; and

5. ICP suffered damages as a result of the breach.[42]

If you find that ICP has proved by a preponderance of the evidence each of the elements I just described, you should find in favor of ICP on this claim. If you find that ICP has not proved each of the other elements that I just described by a preponderance of the evidence, then you should find in favor of Caterpillar on this claim.

---

[42] *Strasburg* v. *Brauvin Realty Services, Inc*., 691 N.E.2d 834, 845, 95 Ill. App.3d 17, 32–33 (Ill. App. 1 Dist. 1998) ("In order to establish an action for intentional interference with contract, a plaintiff must plead and prove: (1) the existence of a valid, enforceable contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) a subsequent breach by the third party resulting from defendant's wrongful conduct; and (5) damages suffered by the plaintiff as a result of the breach.").

### 6.2.1   TORTIOUS INTERFERENCE WITH CONTRACT – INTENT TO INDUCE BREACH

If you've found that a valid enforceable contract existed between ICP and IronPlanet and that Caterpillar knew about that contract, the next issue you must determine is whether Caterpillar intentionally and unjustifiably induced IronPlanet to breach its contract with ICP.

You should find that Caterpillar intentionally and unjustifiably induced IronPlanet to breach its contract if you find any one of the following:

1. The primary goal of Caterpillar's conduct was to induce IronPlanet to breach its contract with ICP;

2. Caterpillar wanted to induce IronPlanet to breach its contract with ICP, even if that was not the main goal of Caterpillar's conduct;

3. Caterpillar knew that the IronPlanet was certain or substantially certain to breach its contract with ICP as a result of Caterpillar's conduct, even if this result was not Caterpillar's main goal or desire.[43]

---

[43]   2 Illinois Forms of Jury Instruction § 47.12.

### 6.2.2   TORTIOUS INTERFERENCE WITH CONTRACT – ACTUAL INDUCEMENT OF BREACH

The next issue for your determination is whether Caterpillar actually induced IronPlanet to breach the contract with ICP. That is, you must determine whether IronPlanet breached its contract with ICP as a result of Caterpillar's conduct.

This element is satisfied if you find that:

1. IronPlanet terminated its contract with ICP; and

2. Caterpillar's conduct, in the natural course of events, caused the breach of contract.

For the second factor, Caterpillar's conduct need not be the only cause of the breach of contract. This factor is satisfied even if you find that other circumstances may have also contributed to IronPlanet's breach.[44]

---

[44]   2 Illinois Forms of Jury Instruction § 47.13.

## 7. <u>DAMAGES</u>

## 7.1    ANTITRUST DAMAGES – GENERALLY

If you find that Caterpillar violated the Sherman Act  and that this violation caused injury to ICP, then you must determine the amount of damages, if any, that ICP is entitled to recover. The fact that I am giving you instructions concerning the issue of ICP's damages does not mean that I believe ICP should, or should not, prevail in this case.  If you reach a verdict for Caterpillar on the issue of liability on the antitrust claim, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that ICP should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of conduct you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured ICP as near as possible to the position in which it would have been if the alleged antitrust violation had not occurred.  In other words, antitrust damages are designed to compensate ICPs for the particular injuries it suffered as a result of the alleged violation of the law.

Unlike other types of law, the antitrust laws do not permit you to award damages to punish a wrongdoer—what we sometimes refer to as "punitive damages"—or to deter a Caterpillar from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation.[45]  As a result, as I will instruct you later, you can consider punitive damages only with respect to ICP's tortious interference claim.

---

[45]    ABA Model Jury Instructions in Civil Antitrust Cases B-304; Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021); *EIS Inc.* v. *IntiHealth Ger GmbH et al*  1:19-cv-01227-GBW (D. Del. 2023).

### 7.1.1   ANTITRUST DAMAGES – CALCULATING DAMAGES

You are permitted to make just and reasonable estimates in calculating damages and you are not required to calculate damages with mathematical certainty or precision.  However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  In other words, the amount of damages overall may not be totally based on guesswork or speculation.  So long as there is a reasonable basis in the evidence for a damages award, ICP should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.

If you find that ICP has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.  If you find that ICP has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages.[46]

---

[46]    ABA Model Jury Instructions in Civil Antitrust Cases B-3; Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 7.1.2   ANTITRUST DAMAGES – FACTORS TO CONSIDER

If you find that Caterpillar violated the Sherman Act and that ICP was injured by that violation, then ICP is entitled to recover damages for such injury that was the direct result or likely consequence of the illegal acts of Caterpillar.  ICP bears the burden of showing that its injuries were caused by Caterpillar's antitrust violation, as opposed to other possible causes.

If you find that ICP's alleged injuries were caused in part by Caterpillar's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of ICP's alleged injuries that was caused by Caterpillar's alleged antitrust violation.

ICP is not entitled to recover for damages that resulted solely from causes other than the alleged conduct of Caterpillar.  The presence of these factors does not mean ICP did not suffer antitrust injury, but ICP is not entitled to recover any damages caused by them.  ICP may only recover for damages caused by the alleged antitrust violation.[47]

The fact that ICP's business was new or not yet established does not prevent you from determining its damages.  In making this determination, you may consider the risks of the business world, the experience and performance of ICP employees, the performance of ICP as it conducted its business, the competition that ICP would have encountered in the area, and the general market conditions of the area of business.[48]

---

[47]   ABA Model Jury Instructions in Civil Antitrust Cases B-4; Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).
[48]   ABA Model Jury Instructions in Civil Antitrust Cases B-8.

### 7.1.3    ANTITRUST DAMAGES – GOING CONCERN VALUE OR GOODWILL

ICP claims that it was harmed because, had it not been for Caterpillar's alleged antitrust violation, the "going concern" or "goodwill "value of its business would have been higher than it actually was.  If you find that ICP was forced to sell, shut down, or otherwise terminate its business because of Caterpillar's alleged antitrust violation, ICP is entitled to damages for any resulting loss to what is called its "going concern value."

Going concern value is the value of a company as an operating venture to a prospective buyer. Going concern damages are designed to compensate ICP for the value that ICP's business would have had at the point ICP went out of business, but for Caterpillar's alleged antitrust violation.

Going concern damages are measured by determining the loss of goodwill suffered by ICP's business as a result of Caterpillar's alleged antitrust violation.  Goodwill consists of the intangible assets of a business, including customer relationships, an established location, employees and their skill sets, and other elements that lead to profits over and above an amount fairly attributable to the return on capital investment and the labor of the owner.  Goodwill also includes the reasonable prospect of continued additional profit in the future.

If you find that Caterpillar committed an antitrust violation and that this violation caused damage to the amount for which ICP was able to sell its business, you may award damages for loss of goodwill.  You may include both lost past profits and the loss of goodwill in calculating a total damages award.  You may not, however, award damages for both loss of goodwill and future lost profits, so in considering future damages in this case you should not add or combine these figures together.  But you may consider the anticipated future profits of a business as a factor in determining the goodwill of that business.

The most important element of goodwill is the expectation of future profitable operations. Calculate:

1. the reasonable expectation of future profits minus;

2. an amount attributable to a reasonable return on the capital investment

If that number is positive, that is the goodwill value; otherwise there is no goodwill value. In determining whether goodwill exists, and how much it is if it exists, you should consider how far into the future the profitable operations of the business might have been expected to continue, considering all of the circumstances existing at the time, had it not been for Caterpillar's alleged antitrust violation.[49]

---

[49]   ABA Model Jury Instructions in Civil Antitrust Cases B-319.

## 7.2    TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – GENERALLY

If you decide for ICP on its tortious interference claim, you must then decide the amount of money to award ICP for damages that have resulted from Caterpillar's wrongful conduct.  ICP seeks two types of damages for its tortious interference claim:   compensatory and punitive damages.

Compensatory damages are to compensate ICP for damages resulting from Caterpillar's conduct.

Punitive damages, on the other hand, are damages awarded to punish Caterpillar for its conduct and to deter them and others from committing similar acts.  As a reminder, while punitive damages are not available for ICP's antitrust claim, they are available for tortious interference, so you may consider them with respect to this claim.

### 7.2.1   TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – COMPENSATORY DAMAGES

If you find that Caterpillar tortiously interfered with ICP's contract with IronPlanet, you should consider the amount of compensatory damages to award.  You may award compensatory damages in an amount you determine to be fair and equitable, consisting of ICP's damages attributable to Caterpillar's tortious interference with contract.

### 7.2.2   TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – PUNITIVE DAMAGES

As noted before, in addition to compensatory damages on its tortious interference claim, ICP is also seeking punitive damages against Caterpillar on that claim.  If you find that Caterpillar tortiously interfered with ICP's contract with IronPlanet, you should consider whether to award ICP punitive damages in addition to compensatory damages.

My instructions in regard to punitive damages are as follows:

In general, punitive damages are meant to punish the wrongdoer and to deter that party, and others, from committing similar acts in the future.[50]  Punitive damages may be awarded when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others.[51]  To determine whether punitive damages are appropriate—and, if so, the amount of such damages— you may properly consider the character of Caterpillar's acts, the nature and extent of the harm to ICP that Caterpillar caused or intended to cause, and Caterpillar's wealth.[52]

---

[50]  *McQueen* v. *Green*, 202 N.E.3d 268, 282, 2022 IL 126666, ¶¶ 57-58 (Ill. 2022) ("In general, punitive damages are meant to punish the wrongdoer and to deter that party, and others, from committing similar acts in the future.").

[51]  *Id.* ("Such damages may be awarded when, among other things, the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others.").

[52]  *Id.* ("To determine whether punitive damages are appropriate, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.") (interior quotation marks omitted).

8.    **DELIBERATION AND VERDICT**

8.1    **DELIBERATION AND VERDICT – INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering the issues in this case. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages: Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.[53]

---

[53]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 8.2     UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.[54]

---

[54]     Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 8.3     DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.[55]

---

[55]     Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 8.4     SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, TikTok, LinkedIn, YouTube, or X (formerly Twitter), to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.[56]

---

[56]   Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 8.5    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.[57]

---

[57] Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).