# EXHIBIT 17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INTERNATIONAL CONSTRUCTION PRODUCTS LLC, | |
| Plaintiff, | |
| v. | C.A. No. 15-108-RGA |
| CATERPILLAR INC., | |
| Defendant. | |

## CATERPILLAR'S DRAFT JURY INSTRUCTIONS

# CONTENTS

1.      GENERAL INSTRUCTIONS ................................................................................. 4

    1.1      INTRODUCTION ........................................................................................... 4

    1.2      JURORS' DUTIES .......................................................................................... 5

    1.3      BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE ...................... 6

2.      EVIDENCE ........................................................................................................ 7

    2.1      EVIDENCE DEFINED.................................................................................... 7

    2.2      CONSIDERATION OF EVIDENCE ................................................................. 9

    2.3      CREDIBILITY OF WITNESSES ................................................................... 10

    2.4      EXPERT WITNESSES ................................................................................. 11

    2.5      LAY OPINION TESTIMONY ....................................................................... 12

    2.6      DEPOSITIONS AS EVIDENCE .................................................................... 13

    2.7      DEMONSTRATIVE EXHIBITS .................................................................... 14

3.      THE PARTIES AND THEIR CONTENTIONS.................................................. 15

    3.1      SUMMARY OF CONTENTIONS ................................................................. 15

    3.2      STIPULATIONS OF FACT ........................................................................... 17

4.      GENERAL PRINCIPLES................................................................................. 18

    4.1      GENERAL PRINCIPLES – PARTIES NOT NAMED AS DEFENDANTS ......... 19

    4.2      GENERAL PRINCIPLES – CORPORATATIONS........................................... 20

5.      ICP'S ANTITRUST CLAIM ............................................................................ 21

    5.1      THE PURPOSE OF THE SHERMAN ACT .................................................... 21

    5.2      SHERMAN ACT SECTION 1 – OVERVIEW ............................................... 22

        5.2.1    THE EXISTENCE OF A CONSPIRACY – AGREEMENT ................................. 24

        5.2.2    THE EXISTENCE OF A CONSPIRACY - PARALLEL CONDUCT ................... 25

        5.2.3    THE EXISTENCE OF A CONSPIRACY -  HUB AND SPOKE........................... 27

        5.2.4    REFUSAL TO DEAL................................................................................... 28

    5.3      ANTITRUST INJURY ................................................................................. 29

    5.4      ICP's ANTITRUST CLAIM – RULE OF REASON – OVERVIEW ................... 32

        5.4.1    PROOF OF COMPETITIVE HARM ................................................................ 33

        5.4.2    MARKET DEFINTION ................................................................................ 35

        5.4.3    EVIDENCE OF COMPETITIVE BENEFITS .................................................... 37

        5.4.4    BALANCING OF COMPETITIVE EFFECTS ................................................... 38

        5.4.5    ANTITRUST DAMAGES............................................................................. 39

**6.    ICP'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM ............. 40**

**6.1    ICP'S TORTIOUS INTERFERENCE CLAIM – OVERVIEW ........................... 40**

**6.2    ICP'S TORTIOUS INTERFERENCE CLAIM – ELEMENTS ........................... 41**

6.2.1    TORTIOUS INTERFERENCE WITH CONTRACT – INTENT TO INDUCE BREACH ....................................................................................................... 42

6.2.2    TORTIOUS INTERFERENCE WITH CONTRACT – ACTUAL INDUCEMENT OF BREACH ................................................................................................. 43

**7.    DAMAGES ........................................................................................ 44**

**7.1    ANTITRUST DAMAGES – GENERALLY ................................................... 44**

7.1.1    ANTITRUST DAMAGES – CALCULATING DAMAGES ................... 45

7.1.2    ANTITRUST DAMAGES – LOST PROFITS ........................................ 46

7.1.3    ANTITRUST DAMAGES – CAUSATION AND DISAGGREGATION ............ 47

7.1.4    MITIGATION ....................................................................................... 50

**7.2    TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – GENERALLY 51**

7.2.1    MITIGATION OF TORTIOUS INTERFERENCE DAMAGES ........................... 52

7.2.2    TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – COMPENSATORY DAMAGES ................................................................... 54

7.2.3    TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – PUNITIVE DAMAGES ................................................................................................. 55

**8.    DELIBERATION AND VERDICT ................................................. 56**

**8.1    DELIBERATION AND VERDICT – INTRODUCTION............................... 56**

**8.2    UNANIMOUS VERDICT ............................................................................. 57**

**8.3    DUTY TO DELIBERATE ............................................................................. 58**

**8.4    SOCIAL MEDIA ........................................................................................... 59**

**8.5    COURT HAS NO OPINION......................................................................... 60**

1.    **GENERAL INSTRUCTIONS**

1.1    **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Please listen very carefully to everything I say.  In following my instructions, you must follow all of them and not single out some and ignore others.  They are all important.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.[1]

---

[1]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 1.2  JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  The evidence is the sworn testimony of the witnesses you hear during the trial and the documents I admit into evidence during trial.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.[2]

---

[2]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.*, 18-1391-RGA, (D. Del., 2021).

### 1.3   BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." ICP has the burden of proving its claims and the amount of damages, if any, by what is called a "preponderance of the evidence." As jurors, you will hear this term a lot, so it is important you understand it.

A preponderance of the evidence means that ICP has to provide evidence which, when considered in light of all the facts, leads you to believe that each element of the claims ICP alleges is more likely true than not. To put it differently, if you were to put ICP's and Caterpillar's evidence on the opposite sides of a scale, the evidence supporting ICP's claims would have to make the scales tip on ICP's side. If the scale is evenly balanced on any part of its claims, ICP has failed to meet its burden and your verdict must be for Caterpillar. If the scales tip in favor of Caterpillar's side, your verdict must be for Caterpillar.[3]

[PLACEHOLDER:    Caterpillar reserves all rights to supplement, amend, or otherwise modify these instructions as noted in its pretrial submission. Caterpillar specifically reserves the right to supplement, amend, or otherwise modify  this and other instructions regarding the submission of evidence pending  any finding, decision, or order on its Motion for Sanctions.]

---

[3]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.*, 18-1391-RGA, (D. Del., 2021).

2.    **EVIDENCE**

2.1  **EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition testimony that was presented to you, and the exhibits that I allowed into evidence.  Nothing else is evidence.

The lawyers' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you determine the facts.  What they said in their opening statements, closing arguments and at other times may help you interpret the evidence, but it is not evidence.  If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The lawyers' questions and objections are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.  My legal rulings are not evidence.  My comments and questions are not evidence.

Testimony that was excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered.   During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness

might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Make your decision based only on the evidence, as I have defined it here, and nothing else.[4]

---

[4]  Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021); *In re Capacitors Antitrust Litigation,* 14-cv-03264-JD (N.D. Cal. 2021).

## 2.2    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[5]

---

[5]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 2.3    CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you cannot do this, then it is your duty and privilege to believe the portions of testimony that, in your judgment, are most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at the trial.  You have the right to distrust such witness's testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses, including expert witnesses.[6]

---

[6]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 2.4   EXPERT WITNESSES

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  The fact that an expert states a fact or an opinion does not mean that the testimony is correct or supported by the factual evidence.  Expert testimony is a guide to interpreting the evidence.  What the facts are is for you to decide.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.[7]

---

[7]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.,* 18-1391-RGA, (D. Del., 2021).

## 2.5   LAY OPINION TESTIMONY

Witnesses who were not testifying as experts may have given their opinions during the trial.  The fact that a witness has stated an opinion does not mean you are required to accept it.  You may give the opinion whatever weight you think appropriate.  Consider the extent of the witness's opportunity to perceive the matters on which his or her opinion is based, the reasons the witness gave for any opinion, and the facts or information on which the witness relied in forming that opinion.  You must decide whether information on which the witness relied was true and accurate.  You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

You should remember that lay witnesses may not testify to hypothetical situations or respond to hypothetical questions, and you should therefore disregard any opinions relating to hypotheticals.[8]

---

[8]   Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 2.6  DEPOSITIONS AS EVIDENCE

Deposition testimony is entitled to the same consideration and is to be judged in the same way as if the witness testified in person here in the courtroom.[9]

---

[9]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 2.7    DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations.

The other exhibits (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses.  These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.[10]

---

[10]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

3.    **THE PARTIES AND THEIR CONTENTIONS**

3.1    **SUMMARY OF CONTENTIONS**

I will give you a brief summary of the positions of the parties.

The plaintiff in this case—the party that is asserting the claims—is a company called International Construction Products, which I will refer to as "ICP" or the "Plaintiff." The defendant in this case is a company called Caterpillar Inc., which I will refer to as "Caterpillar" or the "Defendant." Both ICP and Caterpillar are or were involved in the business of selling certain types of "heavy construction equipment." That is a term that refers to the large vehicles that you may have seen at construction sites that are used for various earthmoving tasks. ICP sold wheel loaders and excavators manufactured by a Chinese company called Lonking (Fujian) International Trade Co., Ltd. ("Lonking"). Caterpillar manufactures a wide range of its own heavy construction equipment and sells it to a network of independently-owned dealers. Caterpillar's dealers, which Caterpillar does not own or control, have assigned territories and are responsible for selling and servicing the equipment to local contractors, rental companies, and others in their territory.

ICP alleges that Caterpillar violated Section 1 of the Sherman Act by conspiring with others, including by agreeing with Ring Power Corporation ("Ring Power") and Thompson Tractor Company ("Thompson Tractor") to restrain trade by causing IronPlanet to refuse to deal with ICP, and that these actions constituted a group boycott.

ICP also claims that Caterpillar tortiously interfered with the Hosted Store Agreement between ICP and IronPlanet. ICP alleges that Caterpillar interfered with the Hosted Store Agreement by wrongfully causing IronPlanet to terminate that agreement.

ICP claims that it should be awarded money damages from Caterpillar as a result of Caterpillar's conduct.

Caterpillar denies that it has violated the Sherman Act or tortiously caused IronPlanet to terminate the Hosted Store Agreement.

Caterpillar denies that it entered into any agreement with Ring Power, Thompson Tractor, or anyone else to threaten to withhold consignments of used equipment from IronPlanet unless it terminated its Hosted Store Agreement with ICP. Caterpillar denies that any action it took harmed competition, as required for a violation of the Sherman Act, or caused ICP injury or damages.

And Caterpillar denies that ICP suffered actual antitrust injury because the large construction equipment that ICP sought to import and sell in the United States did not comply with environmental laws and regulations intended to limit harmful air pollution, nor did ICP or Lonking take necessary steps to obtain special allowances from the U.S. Environmental Protection Agency ("EPA") for higher-polluting construction equipment.

Caterpillar denies that, acting alone, it tortiously caused IronPlanet to terminate the Hosted Store Agreement.

## 3.2  STIPULATIONS OF FACT

The parties have agreed to certain facts that I will now read to you.  You must treat these facts as having been already proven.

[PLACEHOLDER FOR ANY STIPULATED FACTS]

4.    **<u>GENERAL PRINCIPLES</u>**

Because ICP's claims have certain overlapping concepts, I am going to now instruct you on concepts that may appear as "general principles" across the claims so that you have all the information you need in one place.[11]

---

[11]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 4.1    GENERAL PRINCIPLES – PARTIES NOT NAMED AS DEFENDANTS

It is important to remember that this is an action between ICP and Caterpillar: nobody else. This Court has already dismissed ICP's claims against Cat Auction Services, Volvo, and Komatsu. Summary judgment was granted in favor of Caterpillar dealers Ring Power, Thompson Tractor, and Zeigler, where the court found that Ring Power, Thompson, and Zeigler did not conspire between themselves or with anyone else to pressure or threaten IronPlanet, nor did they tortiously interfere with the Hosted Store Agreement. The Eleventh Circuit affirmed that finding for the dealers on appeal.

It does not matter that ICP did not join as a defendant someone else who may have participated in causing the injury ICP claims. This is true even if it appears that the role of the unnamed participant may have been greater than that of Caterpillar. As a result, your deliberations should be focused on ICP's allegations towards Caterpillar and Caterpillar's responses.[12]

---

[12]  4 Modern Federal Jury Instructions – Civil - Antitrust ¶ 79.02[2] (2023).

## 4.2    GENERAL PRINCIPLES – CORPORATATIONS

Caterpillar is a corporation and ICP is what's called a limited liability company, or "LLC." All parties are equal before the law and a corporation or LLC is entitled to the same fair and conscientious consideration by you as any party or person.

Under the law, a corporation is considered to be a person.  A corporation "acts" through its employees, agents, directors, or officers.  A corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of authority.  An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.  Every act of any director, or officer, or employee, or other agent, on behalf of, or in the name of a corporation, if done within the scope of the person's authority, is by law the act of the corporation itself.[13]

---

[13]    *In re Capacitors Antitrust Litigation,* 14-cv-03264-JD (N.D. Cal. 2021); 3A Fed. Jury Prac. & Instr. § 150:2 (6th ed.).

5. **ICP'S ANTITRUST CLAIM**

5.1 **THE PURPOSE OF THE SHERMAN ACT**

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.[14]

The primary purpose of the antitrust laws is to preserve and promote our system of free and open competition and to secure everyone an equal opportunity to engage in business, trade, and commerce, by preventing unreasonable restraints or monopolization of any business or industry so that consumers may receive better goods and services at lower cost.  These laws rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.[15]

---

[14] A. INSTRUCTION 1: PURPOSE, ABA-JI-CIVANTI 1.A
[15] Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 5.2   SHERMAN ACT SECTION 1 – OVERVIEW

I will now instruct you regarding ICP's antitrust claim.

Section 1 of the Sherman Act prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.

The key term here is *unreasonably restrains trade*:  not every contract, combination or conspiracy between competitors violates Section 1 of the Sherman Act.  The Sherman Act only prohibits contracts, combinations, and conspiracies that unreasonably have a negative impact on competition.  ICP must prove the following elements by a preponderance of the evidence:

(1) that the alleged conspiracy existed; that is, the Caterpillar knowingly reached a meeting of the minds with Ring and Thompson, that Ring and Thompson agreed with each other, and had a "conscious commitment to a common scheme designed to achieve an unlawful objective,"[16]

(2) that the effect of this conspiracy unduly restrained trade by reducing the supply, increasing the price, or decreasing innovation of goods in a relevant antitrust market;

(3) that the restraint caused ICP to suffer an actual injury to its business.[17]

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a conscious commitment to a common scheme in furtherance of an unlawful objective. ICP is required to demonstrate evidence of a conspiracy. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

---

[16] *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984).
[17] 4 Modern Federal Jury Instructions – Civil - Antitrust ¶ 79.06[1] (2023).

A plaintiff may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy. I have already ruled that ICP has not put forth any direct evidence that Caterpillar engaged in a conspiracy.  You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.[18]

---

[18]   1. INSTRUCTION 1: DEFINITION, EXISTENCE, AND EVIDENCE, ABA-JI-CIVANTI 2.A.1

### 5.2.1   THE EXISTENCE OF A CONSPIRACY – AGREEMENT

As I have just told you, the first element that ICP must prove is that Caterpillar entered into an unlawful agreement or conspiracy.  This is a threshold determination because the part of the Sherman Act we are concerned with outlaws certain joint activities by competitors, but not actions taken by a single firm or corporation.[19]

The word "conspiracy" as used in the Sherman Act, means "together with" someone else. A conspiracy is formed when two or more people or corporations join together to accomplish some unlawful purpose by acting together.  The essence of a conspiracy under the Sherman Act is an agreement between two or more people or corporations to restrain trade.  To satisfy the "unlawful agreement or conspiracy" element, ICP must prove, by a preponderance of the evidence, that:

1. The alleged conspiracy existed;

2. That two or more entities, including Caterpillar, were members of that conspiracy.

---

[19]   4 Modern Federal Jury Instructions – Civil - Antitrust ¶ 79.02[2] (2023).

### 5.2.2   THE EXISTENCE OF A CONSPIRACY - PARALLEL CONDUCT

ICP contends that Caterpillar engaged in parallel conduct against their independent business interests that, when considered with other evidence, shows that a conspiracy existed among Caterpillar, Ring Power, and Thompson.

The mere fact that Caterpillar acted in any manner, however, or the fact that they may have associated with one another, does not by itself establish the existence of a conspiracy. Their behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions. If the parties acted similarly but totally independently of one another, without any agreement among them, then there would not be a conspiracy. For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas. Actions taken in a company's independent business interest are not evidence of a conspiracy, while a company's parallel actions against its own business interest may be indicative of a conspiracy.

You must decide whether Caterpillar's conduct was, more probably than not, the result of an agreement or understanding among them. You may infer that a conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely than not that Caterpillar had an agreement or understanding with either IronPlanet, Ring Power, and/or Thompson Tractor rather than the coincidence of the parties acting independently or responding in similar ways to a common event or occurrence. In making this determination, you should consider the similar conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you that it is more likely that the similar actions were the product of an agreement or understanding with one another than their own independent decisions.

If, after considering all of the evidence, you conclude that ICP failed to prove that Caterpillar's similar conduct was more likely than not the result of an agreement or understanding with one or more of the other alleged members of the conspiracy, then you must find against ICP and in favor of Caterpillar on the question of whether Caterpillar participated in a conspiracy.[20]

---

[20] 2. INSTRUCTION 2: PARALLEL CONDUCT, ABA-JI-CIVANTI 2.A.2

### 5.2.3   THE EXISTENCE OF A CONSPIRACY -  HUB AND SPOKE

Caterpillar is the only equipment manufacturer in this case; ICP does not allege that it conspired with any of its competitors in execution of the alleged Sherman Act violation.  Ring Power and Thompson are dealers of equipment manufactured by Caterpillar, and are not Caterpillar's competitors.  As a result, ICP must prove that Ring Power and Thompson are horizontal competitors and agreed with each other to engage in a conspiracy to pressure or threaten IronPlanet to cease doing business with ICP.  It is not enough for ICP to prove that Ring Power and Thompson each independently agreed with Caterpillar; ICP must prove that Ring Power and Thompson agreed with each other.[21]

If, after considering all of the evidence, you conclude that ICP failed to prove that Ring Power and Thompson competed with one another and agreed with each other to engage in the alleged conspiracy, then you must find against ICP and in favor of Caterpillar.

---

[21] *Kotteakos v. U.S.,* 328 U.S. 750 (1946) (reversing conspiracy finding and discussing need to prove the existence of horizontal agreements); *In re Insurance Brokerage Antitrust Lit.*, 618 F.3d 300, 327 (3d Cir. 2010) (affirming lower court's refusal to find a conspiracy when the plaintiffs "do not provide a reason to infer that the [defendants] had agreed among themselves"); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 462 (3d Cir. 1998) (affirming summary judgment for a dealer where the plaintiff did not provide evidence of that particular dealer entering into a horizontal agreement, and holding that "a conspiracy is horizontal in nature when a number of competitor firms agree with each other and at least one of their common suppliers or manufacturers").

### 5.2.4   REFUSAL TO DEAL

ICP alleges that Caterpillar, Ring Power, and Thompson entered into an agreement to threaten IronPlanet to refuse to deal entirely with ICP. Caterpillar claims that IronPlanet remained willing to conduct business with ICP, even after the termination of the Hosted Store Agreement. In order to find it suffered an antitrust injury, ICP must prove that IronPlanet refused to deal with ICP. If ICP was not, in fact, shut out from competing in the market by Caterpillar's actions, but instead "had an active avenue of competition . . . that he chose to voluntarily foreclose," it cannot succeed on its Sherman Act claim.[22] Different terms than an original deal, including terms that may be unacceptable to a particular party, is not enough to constitute a refusal to deal.[23]

If, after considering all of the evidence, you conclude that ICP failed to prove that IronPlanet refused to deal entirely with ICP, then you must find against ICP and in favor of Caterpillar on ICP's Sherman Act claim.

---

[22] *Untracht v. Fikri,* 454 F. Supp. 2d 289, 309-310 (W.D. Pa. 2006), *aff'd*, 249 F. App'x 268 (3d Cir. 2007).

[23]  *See SEI Glob. Servs., Inc. v. SS&C Advent*, 496 F. Supp. 3d 883, 899–900 (E.D. Pa. 2020), *aff'd*, No. 20-3386, 2022 WL 2356730 (3d Cir. June 30, 2022) (finding that plaintiff alleged only that defendant will no longer provide plaintiff "access to its software at suboptimal prices," and that there is no refusal to deal unless the "facts demonstrate[d] an absolute denial of the use of" the relevant service).

### 5.3 ANTITRUST INJURY

If you find that ICP has proven that Caterpillar entered into an agreement with Ring Power and Thompson to threaten IronPlanet to refuse to deal with ICP, you must then determine if ICP has suffered an injury to its business or property because of the anticompetitive effects of the unlawful agreement between Caterpillar and the alleged members of the conspiracy.

If you find ICP was injured, you must also decide if ICP is entitled to recover damages from Caterpillar for that injury. ICP meets its burden under this element only if it proves it is entitled to recover damages for the alleged injury.

If ICP can establish by a preponderance of the evidence that it was in fact injured by Caterpillar's conduct, that Caterpillar's conduct was a material cause of ICP's injury, and that Caterpillar's injury was the type that the antitrust laws were intended to prevent, then ICP is entitled to recover damages for the injury to its business or property.[24]

ICP cannot suffer an antitrust injury if its asserted harm is based on illegal conduct.[25] If, for example, you find that ICP or Lonking sought to import and sell construction equipment in the United States that did not meet EPA's "Tier 4" standards for controlling air pollution, and that ICP or Lonking did not satisfy EPA requirements for obtaining special allowances to sell non-Tier 4 equipment, then you must find ICP did not meet its burden of proving antitrust injury.

---

[24] Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021); 4 Modern Federal Jury Instructions-Civil ¶ 79.02[5] (2023).

[25] *PharmacyChecker.com v. Nat'l Ass'n of Bds of Pharmacy*, No. 19-CV-7577 (KMK), 2023 WL 2973038, at *13 (S.D.N.Y. Mar. 28, 2023); *City of Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 265 (3d Cir.1998).

### 5.3.1.1 ANTITRUST INJURY – MATERIAL CAUSE

ICP has the burden to prove that, as a matter of fact, Caterpillar's conduct was a "material cause" of ICP's injury.  This means that ICP must prove that some of the damage occurred to it as a result of Caterpillar's alleged antitrust violation, and not as a result of some other cause. [26]

---

[26] Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021)

### 5.3.1.2    INJURY OF THE TYPE THE ANTITRUST LAWS WERE DESIGNED TO PREVENT

ICP must prove that its injury is the type of injury that the antitrust laws were designed to prevent. This is sometimes referred to as an "antitrust injury." Generally speaking, the Sherman Act was designed to only prevent harm to competition and not harm to individual competitors. ICP must prove that Caterpillar's alleged Sherman Act violation caused harm to competition, not just ICP as an individual competitor; the result of Caterpillar's alleged conduct must have a wider impact on the competitive market, namely by affecting prices, quantity, or quality of goods or services in the market. If ICP's injuries were caused by acts that led to a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then ICP's injuries are antitrust injuries.

On the other hand, if ICP did not prove that Caterpillar's alleged violation resulted in harm to competition in the market context and not just its own welfare, then ICP's injuries are not antitrust injuries and ICP may not recover damages for those injuries under the antitrust laws.[27]

---

[27]   Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021); 2. INSTRUCTION 3B: RULE OF REASON--PROOF OF COMPETITIVE HARM, ABA-JI-CIVANTI 1.C.2.

### 5.4   ICP's ANTITRUST CLAIM – RULE OF REASON – OVERVIEW

ICP's Sherman Act claim is examined under what is called the "rule of reason."  Under Section 1 of the Sherman Act, an agreement in restraint of trade is illegal only if it is found to be unreasonable.  If you find an agreement in restraint of trade here, you must determine, therefore, whether the restraint here is unreasonable. In making this determination, you must first determine whether ICP has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If you find that plaintiff has proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.  If you find that the evidence is not sufficient to prove any one or more of these elements, then you must find for Caterpillar and against ICP on this claim.  If you find that ICP has proven all of these elements by a preponderance of the evidence, then you must find for ICP and against Caterpillar on this claim.[28]

I will now review each step of the analysis in more detail.

---

[28]  1. INSTRUCTION 3A: RULE OF REASON—OVERVIEW, ABA-JI-CIVANTI 1.C.1

### 5.4.1   PROOF OF COMPETITIVE HARM

As I mentioned, to prove that the challenged restraint is unreasonable, ICP first must demonstrate that the restraint has resulted in a substantial harm to competition. Harm that occurs merely to ICP's individual business is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, ICP must show that the harm to competition occurred in an identified market, known as a relevant market. There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. It is ICP's burden to prove the existence of a properly defined relevant market.

If you find that ICP has proven the existence of a relevant product and geographic market, then you must determine whether plaintiff also has proven that the challenged restraint has a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality. If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable and enter a verdict for Caterpillar.

In determining whether the challenged restraint has produced competitive harm, you may look at the following factors:

• the effect of the restraint on prices, output, product quality, and service;

• the purpose and nature of the restraint;

• the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

- whether the defendant possesses market power

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether defendant possesses market power is defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. If defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If defendant does not possess market power, it is less likely that the challenged restraint has resulted in a substantial harmful effect on competition in the market.[29]

---

[29] 2. INSTRUCTION 3B: RULE OF REASON--PROOF OF COMPETITIVE HARM, ABA-JI-CIVANTI 1.C.2

### 5.4.2   MARKET DEFINTION

For *rule of reason* analysis, ICP must prove, by a preponderance of the evidence, the existence of a "relevant product market" and "relevant geographic market." The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. The basic idea of a relevant geographic market is the region in which companies compete in a particular product market; the conditions of competition in a geographic market are similar enough to distinguish it from neighboring areas.

The relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test based on the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable so long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant sustained increase in the price of one product would result in a substantial number of consumers switching from that product to another. In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn? Generally speaking, a small but significant increase in price is approximately a 5% increase in price not due to cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may consider: (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and the sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either the industry or the public as to whether the products are in separate markets; (5) the views of ICP and Caterpillar regarding which products compete against each other; (6) the existence or absence of different customer groups or distribution channels; (7) disadvantages to using other products that might deter customers from substituting to products outside of the market; and (8) differences in prices for particular products.[30]  It is ICP's burden to prove both a relevant product and geographic area to succeed on its Sherman Act claim.  If ICP failed to prove either a relevant product market or relevant geographic market, you must enter a verdict for Caterpillar.

---

[30]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 5.4.3   EVIDENCE OF COMPETITIVE BENEFITS

If you find that ICP has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways. If you find that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If ICP proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.[31]

---

[31] 3. INSTRUCTION 3C: RULE OF REASON--EVIDENCE OF COMPETITIVE BENEFITS, ABA-JI-CIVANTI 1.C.3

### 5.4.4   BALANCING OF COMPETITIVE EFFECTS

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. ICP bears the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.[32]

---

[32]   4. INSTRUCTION 3D: RULE OF REASON--BALANCING THE COMPETITIVE EFFECTS, ABA-JI-CIVANTI 1.C.4

### 5.4.5   ANTITRUST DAMAGES

If you find that ICP has proven a violation of the Sherman Act, you may award non-speculative damages that are supported by data.  Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The antitrust laws do not permit you to award damages to punish a wrongdoer--what we sometimes refer to as punitive damages--or to deter particular conduct in the future.

If you find that ICP has not proved these elements, then you should find in favor of Caterpillar on this claim.[33]

---

[33]   Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021); ABA Model Jury Instructions in Civil Antitrust Cases A-300; 4 Modern Federal Jury Instructions-Civil ¶ 79.02[5] (2023).

6.    **ICP'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM**

   6.1   **ICP'S TORTIOUS INTERFERENCE CLAIM – OVERVIEW**

The second claim that ICP asserts against Caterpillar is a claim of tortious interference with contract.

Specifically, ICP claims that Caterpillar interfered with a contract called the "Hosted Store Agreement" between ICP and IronPlanet.  ICP alleges that Caterpillar interfered with the Hosted Store Agreement by wrongfully causing IronPlanet to terminate that agreement.   Caterpillar denies these allegations.

## 6.2   ICP'S TORTIOUS INTERFERENCE CLAIM – ELEMENTS

To establish its claim against Caterpillar for tortious interference, ICP must prove each of the following elements by a preponderance of the evidence:

1. A valid, enforceable contract existed between ICP and IronPlanet;

2. Caterpillar knew about that contract between ICP and IronPlanet;[34]

3. Caterpillar intentionally and unjustifiably induced IronPlanet to breach that contract with ICP;

4. IronPlanet actually breached its contract with ICP as a result of Caterpillar's wrongful conduct; and

5. ICP suffered damages as a result of the breach.[35]

If you find that ICP has proved by a preponderance of the evidence each of the elements I just described, you should find in favor of ICP on this claim.  If you find that ICP has not proved each of the elements that I just described by a preponderance of the evidence, then you should find in favor of Caterpillar on this claim.

---

[34]  *N.B.:*  ICP is proposing that the parties stipulate that the Hosted Store Agreement between ICP and IronPlanet was a valid and enforceable agreement, and that Caterpillar knew about that contract.  If the parties agree to that stipulation, then the Court should instruct the jury that the parties have stipulated to those two elements, so the jury should consider both of those elements as established. [Caterpillar Note: We will meet and confer on the proposed language.]

[35]  2 Illinois Forms of Jury Instruction § 47.02; *Strasburg* v. *Brauvin Realty Services, Inc*., 691 N.E.2d 834, 845, 95 Ill. App.3d 17, 32–33 (Ill. App. 1 Dist. 1998) ("In order to establish an action for intentional interference with contract, a plaintiff must plead and prove:  (1) the existence of a valid, enforceable contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) a subsequent breach by the third party resulting from defendant's wrongful conduct; and (5) damages suffered by the plaintiff as a result of the breach.")

### 6.2.1   TORTIOUS INTERFERENCE WITH CONTRACT – INTENT TO INDUCE BREACH

If you've found that a valid enforceable contract existed between ICP and IronPlanet and that Caterpillar knew about that contract, the next issue you must determine is whether Caterpillar intentionally and unjustifiably induced IronPlanet to breach its contract with ICP.

You should find that Caterpillar intentionally and unjustifiably induced IronPlanet to breach its contract if you find ICP proved one of the following:

1. Caterpillar had the primary purpose of inducing IronPlanet to breach its contract with ICP;

2. Caterpillar illegally and impermissibly induced IronPlanet to breach its contract with ICP, even if that was not Caterpillar's primary purpose;

3. Caterpillar knew that IronPlanet was certain or substantially certain to breach its contract with ICP as a result of Caterpillar's conduct.[36]

---

[36] 2 Illinois Forms of Jury Instruction § 47.12

### 6.2.2   TORTIOUS INTERFERENCE WITH CONTRACT – ACTUAL INDUCEMENT OF BREACH

The next issue for your determination is whether Caterpillar actually induced IronPlanet to breach the contract with ICP.  That is, you must determine whether IronPlanet breached its contract with ICP as a result of Caterpillar's conduct.

This element is satisfied if you find that:

1.   IronPlanet terminated its contract with ICP; and

2.   Caterpillar's tortious or wrongful conduct caused the breach of contract. [37]

---

[37] 2 Illinois Forms of Jury Instruction § 47.13.

7.    **DAMAGES**

7.1    **ANTITRUST DAMAGES – GENERALLY**

If you find that Caterpillar violated the Sherman Act  and that this violation injured competition in a relevant antitrust product and geographic market and caused injury to ICP, then you must determine the amount of damages, if any, that ICP is entitled to recover.  The fact that I am giving you instructions concerning the issue of ICP's damages does not mean that I believe ICP should, or should not, prevail in this case.  If you reach a verdict for Caterpillar on the issue of liability on the antitrust claim, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that ICP should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of conduct you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured ICP as near as possible to the position in which it would have been if the alleged antitrust violation had not occurred.  In other words, antitrust damages are designed to compensate ICP for the particular injuries it suffered as a result of the alleged violation of the law and the harm it caused to competition in a relevant antitrust product and geographic market.

Unlike other types of law, the antitrust laws do not permit you to award damages to punish a wrongdoer—what we sometimes refer to as "punitive damages"—or to deter Caterpillar from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation.[38]  As a result, you cannot consider punitive damages for ICP's Sherman Act claim.

---

[38]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021);  *EIS Inc.* v. *IntiHealth Ger GmbH et al*  1:19-cv-01227-GBW (D. Del. 2023).

### 7.1.1    ANTITRUST DAMAGES – CALCULATING DAMAGES

You are permitted to make just and reasonable estimates in calculating damages and you are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. In other words, the amount of damages overall may not be totally based on guesswork or speculation. .

ICP must prove that each of the assumptions upon which the damages calculation is based are reasonably based on evidence in the record and not speculative. If you find that a damages calculation is not based on evidence in the record and reasonable inference, and instead can only be reached through guesswork or speculation, then you may not award damages.

If you find that ICP has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence. If you find that ICP has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages.[39]

---

[39]   Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 7.1.2   ANTITRUST DAMAGES – LOST PROFITS

ICP claims that it was harmed because it lost profits as a result of Caterpillar's alleged antitrust violation.  If you find that Caterpillar committed an antitrust violation and that this violation caused injury to ICP, you now must calculate the profits, if any, that ICP lost as a result of Caterpillar's antitrust violation.

Lost profits for which ICP can recover are the profits ICP would have earned, both in the past and in the future, had it not suffered injury as a result of the violation of the antitrust laws. Your award of lost profits should be your reasonable estimate of the amounts ICP would have earned in the past and in the future less the amount ICP actually earned and can be expected to earn.

The fact that ICP's business was new or not yet established, by itself, does not prevent you from determining its lost profits.  In making this determination, you may consider the risks of the business world, the experience and performance of ICP employees, the performance of ICP as it conducted its business, the competition that ICP would have encountered in the area, and the general market conditions of the area of business.[40]

---

[40] 8. INSTRUCTION 8: DAMAGES FOR COMPETITORS--LOST PROFITS, ABA-JI-
CIVANTI 6.B.8

### 7.1.3   ANTITRUST DAMAGES – CAUSATION AND DISAGGREGATION

If you find that Caterpillar violated the Sherman Act, caused harm to competition in a relevant antitrust product and geographic market such as reduced supply or innovation or increased prices, and that ICP was injured by that violation, then ICP is entitled to recover damages that are reasonably based in the evidence and non-speculation for such injury that was the direct result or likely consequence of the illegal acts of Caterpillar.  ICP bears the burden of showing that its injuries were caused by Caterpillar's antitrust violation, as opposed to other possible causes and factors.

ICP claims that it suffered injury because it lost sales and profits as a result of Caterpillar's alleged antitrust violation. Caterpillar claims that any profits or sales lost by ICP occurred as a result of other factors that have nothing to do with the alleged antitrust violation. These include ICP's untested and poor business plan, subpar quality of Lonking equipment, lack of parts available for Lonking products, failure of ICP and Lonking to comply with EPA and CARB regulations for the legal import and sale of foreign equipment, poor capitalization and inability to secure investment, and other factors.  ICP is not entitled to recover for lost profits that resulted from these or other causes arising from the normal course of business activity.  ICP only may recover for damages caused by the alleged antitrust violation.

ICP bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that ICP was injured by Caterpillar's alleged antitrust violation, there is a reasonable basis to apportion ICP's alleged injury between lawful and unlawful causes, and ICP properly apportioned its damages between lawful and unlawful causes, then you may award damages.

If you find that ICP's alleged injuries were caused in part by Caterpillar's alleged antitrust violation and in part by other causes or factors, then you may award damages only for that portion of ICP's alleged injuries that was caused by Caterpillar's alleged antitrust violation.[41]

For example, if you find that ICP or Lonking did not comply with EPA standards applicable to the heavy-duty construction equipment at issue in this case, you must find that ICP did not meet its burden of proving antitrust damages for any such equipment. Likewise, if you find that ICP or Lonking did not obtain special allowances from EPA under the "TPEM" program to import and sell the Lonking construction equipment at issue in this, you must find that ICP did not meet its burden of proving antitrust damages for any such equipment.Moreover, if you find that ICP or Lonking did obtain special allowances from EPA under the "TPEM" program to import and sell the Lonking construction equipment at issue in this case, then you must find that lost profits, if any, for the time period of 2014 to 2018 are limited to those profits ICP likely would have earned for the number of units of Lonking equipment that likely would have been sold in compliance with the "volume limits" set forth in the EPA regulations (i.e., no more than 1,400 units (consisting of no more than 700 in the 56 kW to less 130 kW power category and no more than 700 in the 130 kW to less than 560 kW power category) during the period from 2014 to 2018).

ICP is not entitled to recover for lost profits that resulted solely from causes or factors other than the alleged conduct of Caterpillar.  The presence of these causes or factors does not mean ICP did not suffer antitrust injury, but ICP is not entitled to recover any damages caused by them.  ICP may only recover for damages caused by the alleged antitrust violation.[42]

---

[41]   4. INSTRUCTION 4: CAUSATION AND DISAGGREGATION, ABA-JI-CIVANTI 6.B.4
[42]   Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

If you find that ICP's alleged injuries were caused by factors other than Caterpillar's alleged antitrust violation, then you must return a verdict for Caterpillar. If you find that there is no reasonable basis to apportion ICP's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.[43]

---

[43] 4. INSTRUCTION4: CAUSATION AND DISAGGREGATION, ABA-JI-CIVANTI 6.B.4

### 7.1.4   MITIGATION

ICP may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. ICP is not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If ICP failed to take reasonable steps available to it, and the failure to take those steps resulted in greater harm to ICP than it would have suffered had it taken those steps, then ICP may not recover any damages for that part of the injury it could have avoided.

Caterpillar has the burden of proof on this issue. Caterpillar must prove by a preponderance of the evidence that ICP:

(1) acted unreasonably in failing to take specific steps to minimize or limit its losses;

(2) that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps; and

(3) the amount by which ICP's loss would have been reduced had it taken those steps.

In determining whether ICP failed to take reasonable measures to limit its damages, you must remember that the law does not require plaintiff to take every conceivable step that might reduce its damages. The evidence must show that ICP failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in plaintiff's position would likely have adopted, given the circumstances as they appeared at that time. ICP should be given wide latitude in deciding how to handle the situation, so long as what plaintiff did was not unreasonable in light of the existing circumstances.[44]

---

[44] 14. INSTRUCTION 14: MITIGATION, ABA-JI-CIVANTI 6.B.14

## 7.2    TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – GENERALLY

If you decide for ICP on its tortious interference claim, you must then decide the amount of money to award ICP for damages that have resulted from Caterpillar's wrongful conduct.  ICP seeks two types of damages for its tortious interference claim:  compensatory and punitive damages.

Compensatory damages are to compensate ICP for damages resulting from Caterpillar's conduct.  ICP must prove actual, non-speculative damages resulting from Caterpillar's alleged tortious interference to be awarded damages.

Punitive damages, on the other hand, are damages awarded to punish Caterpillar if you find that its conduct was particularly egregious and to deter them and others from committing similar acts.  As a reminder, while punitive damages are not available for ICP's antitrust claim, they are only available for tortious interference if you find Caterpillar's conduct was particularly egregious, so you may consider them with respect to this claim if you find that Caterpillar acted with actual malice, meaning with a positive desire and intention to injure ICP, or willfully or with such gross negligence as to indicate a wanton disregard of the rights of others, going above and beyond the elements required to establish the underlying tort.[45]

---

[45] Koehler, 2016 IL App (1st)

### 7.2.1     MITIGATION OF TORTIOUS INTERFERENCE DAMAGES

ICP may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. ICP is not entitled to increase any damages through inaction. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If ICP failed to take reasonable steps available to it, and the failure to take those steps resulted in greater harm to ICP than it would have suffered had it taken those steps, then ICP may not recover any damages for that part of the injury it could have avoided.

Caterpillar has the burden of proof on this issue. Caterpillar must prove by a preponderance of the evidence that ICP:

(1) acted unreasonably in failing to take specific steps to minimize or limit its losses;

(2) that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps; and

(3) the amount by which ICP's loss would have been reduced had it taken those steps.

In determining whether ICP failed to take reasonable measures to limit its damages, you must remember that the law does not require plaintiff to take every conceivable step that might reduce its damages. The evidence must show that ICP failed to take commercially reasonable measures that were open to it. Commercially reasonable measures mean those measures that a prudent businessperson in plaintiff's position would likely have adopted, given the circumstances as they appeared at that time. ICP should be given wide latitude in deciding how to handle the

situation, so long as what plaintiff did was not unreasonable in light of the existing

circumstances.[46]

---

[46]  14. INSTRUCTION 14: MITIGATION, ABA-JI-CIVANTI 6.B.14; Jury Instructions in
*Jamsports and Entertainment, LLC  v. Paradama Productions, Inc*., 2005 WL 3968768
(N.D.Ill. 2005).

### 7.2.2   TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – COMPENSATORY DAMAGES

If you find that Caterpillar tortiously interfered with ICP's contract with IronPlanet, you may award compensatory damages.  Compensatory damages are actual, non-speculative damages suffered by ICP, such as lost profits.[47]  You may award compensatory damages in an amount you determine to be fair and equitable, consisting of:

1.  ICP's actual damages attributable to Caterpillar's tortious interference with contract;

2.  ICP's lost profits attributable to Caterpillar's tortious interference with contract.

ICP must prove its actual damages, in this case lost profits, to a reasonable degree of certainty, and its evidence cannot be remote, speculative, or uncertain.[48]  If ICP failed to prove its actual damages to a reasonable degree of certainty, you may not award compensatory damages.

---

[47] Dowd, 2016 IL App (1st)
[48] Dowd, In re Estate of Halas 209 Ill. App.3d 333 (1991)

### 7.2.3   TORTIOUS INTERFERENCE WITH CONTRACT DAMAGES – PUNITIVE DAMAGES

As noted before, in addition to compensatory damages on its tortious interference claim, ICP is also seeking punitive damages against Caterpillar on that claim.  If you find that Caterpillar tortiously interfered with ICP's contract with IronPlanet with particularly egregious conduct going well beyond the elements necessary to establish the tort, you should consider whether to award ICP punitive damages in addition to compensatory damages.

My instructions in regard to punitive damages are as follows:

Punitive damages are only available in cases where a Defendant's actions are particularly egregious.

In general, punitive damages are meant to punish the wrongdoer and to deter that party, and others, from committing similar acts in the future.[49]  Punitive damages may be awarded when the defendant acts with actual malice, or willfully or with such gross negligence as to indicate a wanton disregard of the rights of others.[50]  This means that ICP must show that Caterpillar had an actual or deliberate intention to harm or, if not intentional, had an utter indifference to, or conscious disregard for, the rights of others.

To determine whether punitive damages are appropriate—and, if so, the amount of such damages— you may properly consider the character of Caterpillar's acts, the nature and extent of the harm to ICP that Caterpillar maliciously or willfully intended to cause, and Caterpillar's financial condition.[51]

---

[49]  *McQueen* v. *Green*, 202 N.E.3d 268, 282, 2022 IL 126666, ¶¶ 57-58 (Ill. 2022) ("In general, punitive damages are meant to punish the wrongdoer and to deter that party, and others, from committing similar acts in the future.").

[50]  *Id.* ("Such damages may be awarded when, among other things, the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others.").

[51]  *Id.* ("To determine whether punitive damages are appropriate, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff

## 8. <u>DELIBERATION AND VERDICT</u>

### 8.1 **DELIBERATION AND VERDICT – INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering the issues in this case.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages:  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.[52]

---

that the defendant caused or intended to cause and the wealth of the defendant.") (interior quotation marks omitted).

[52] Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 8.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict in favor of ICP, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans. You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.[53]

---

[53]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

### 8.3  DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.[54]

---

[54]    Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

**8.4   SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, TikTok, LinkedIn, YouTube, or X (formerly Twitter), to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.[55]

---

[55]   Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).

## 8.5  COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.[56]

---

[56]  Jury Instructions in *Basf Corp* v. *Ingevity Corp.* 18-1391-RGA, (D. Del., 2021).