IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERNATIONAL CONSTRUCTION       :
PRODUCTS, LLC,                   :
                                 :
        Plaintiff,              :
                                 :
   v.                            :   Civil Action No. 15-108-RGA
                                 :
CATERPILLAR, INC., et al.,       :
                                 :
        Defendants.             :

**MEMORANDUM ORDER**

Defendant filed a Daubert motion to exclude testimony of Dr. Leitzinger, an antitrust expert. (D.I. 609). The motion is fully briefed. (D.I. 612, 636, 662). Defendant filed a related motion in limine. (D.I. 689-25). It too is fully briefed. (D.I. 689-26, 689-27). I had a *Daubert* hearing on March 27, 2024, at which Dr. Leitzinger testified. Trial is scheduled to begin April 5, 2024.

The main point of the Daubert briefing is to exclude Dr. Leitzinger from offering a lost profits opinion. I think the dispute boils down to one sentence in his expert report: "Given the discussion above regarding favorable market circumstances, Lonking's sales success outside of China, and the benefits associated with the IronPlanet sales platform, I find the sales projections reasonable as well." (Leitzinger Report of July 12, 2023, ¶ 46).

The favorable market circumstances appear to be that Chinese manufacturers were increasing output and quality, had lower prices, and had excess production capacity in their domestic market. (*Id.* at 4-6, 9-10). Lonking's sales success outside of China appears to be that they sold in "more than 40 countries and regions" outside China, and that from 2013 to 2019, they had essentially flat sales of about 650 million RMB. (*Id.* at 7-8 & Figure 3). The IronPlanet

sales platform is a form of e-commerce, and e-commerce sales by Merchant Wholesalers of Machinery, Equipment, and Supplies were significantly increasing in the United States. (*Id.* at 12-14 & Figure 5). IronPlanet was the largest online marketplace in the world for the sale of heavy construction equipment. (*Id.* at 14). Defendant was concerned that sales of Lonking's equipment would compete with sales of Defendant's used equipment. (*Id.* at 21).

The "projections" are essentially only described in one paragraph (¶ 46) of the expert report. In it, Dr. Leitzinger describes what the projections are, and he says that other witnesses state that they provide "a reasonable representation" of what would have happened in the absence of Defendant's illegal conduct. He states, "I have been instructed by counsel to use the [projections] in estimating [Plaintiff's] damages." That's it. No discussion of who created the projections, why the projections were created, what assumptions went into them, or how the very general discussion of "favorable market circumstances, Lonking's sales success outside of China, and the benefits associated with the IronPlanet sales platform" provides a basis other than *ipse dixit* for the conclusion that the projections are reasonable.

I consider the admissibility of the "reasonableness" opinion in light of recently-amended Rule of Evidence 702. It now reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Dr. Leitzinger's opinion that the projections are reasonable is not a reliable application of any economic principle or method. First, Dr. Leitzinger does not provide any analysis of how he gets from his review of general market conditions, Lonking's history, and IronPlanet's history to the reasonableness of the projections. Second, Dr. Leitzinger applies no economic analysis to investigate anything about the projections. For example, there is no modeling. There is no analysis of any of the assumptions that went into the projections. Dr. Leitzinger simply did what he was told to do, that is, take the projections as the basis for damages. From there, he identified the projected profits, used unchallenged economic analysis to calculate appropriate discount rates, and applied the discount rates to reach a damages number.

Dr. Leitzinger's testimony at the Daubert hearing that he considered that the projections' average market share over five years of 6% as being reasonable was not disclosed in the expert report. But, even if it had been, it does not help. It suffers from the same defects as the opinion that was disclosed in his report.

In *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 290-95 (3d Cir. 2012), the Court of Appeals held that it was not an abuse of discretion to exclude the antitrust damages opinion of an expert for lack of reliability. "The reliability analysis required by Daubert applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion." *Id.* at 291 (cleaned up). Here, there is no disclosure of a reliable methodology and there is no disclosure of any link, reliable or otherwise.

Thus, I will exclude any testimony by Dr. Leitzinger expressing an opinion on the reasonableness of the projections.

The Daubert motion also seeks to exclude any opinion by Dr. Leitzinger relating to antitrust injury or market foreclosure. (D.I. 612 at 19-20). Plaintiff does not contest that request. (D.I. 636 at 4 n.1). Thus, I will exclude any testimony on those two subjects.

The Daubert motion also seeks to exclude the lost profits opinion on the basis that Dr. Leitzinger did not attempt to "disaggregate" the lost profits caused by Defendant's conduct from the lost profits caused by EPA regulations or lawful competition. Since I am excluding the reasonableness opinion, and I expect other witnesses to lay a foundation for the reasonableness of assuming that EPA regulations would not impact the projections and that the projections already take into account lawful competition, I do not think there is a basis for excluding Dr. Leitzinger's opinion on this basis.

The Daubert motion (D.I. 609) is GRANTED, but only to the extent set forth above.[1]

The motion in limine (D.I. 689-25) addresses the disaggregation that is also addressed in the Daubert motion. Two of the three arguments Defendant makes are the same as in the Daubert motion, and I reach the same conclusion as I did in regard to the Daubert motion. The third argument is one sentence—that Dr. Leitzinger's analysis did not factor in product defects. Since I am excluding his reasonableness opinion, and I doubt that his consideration, or lack of consideration, of product defects will matter, I will deny the third aspect of the motion in limine without prejudice to either party raising the issue should it become germane at trial.

---

[1] The reasonableness of the projections is ultimately a question for the jury. Plaintiff's fact witnesses are expected to testify about the basis for the projections. Dr. Leitzinger may testify as to his discount rate analysis. What he may not do is state expressly or implicitly that the projections are reasonable.

The motion in limine (D.I. 689, 25) is DENIED.

IT IS SO ORDERED this 3rd day of April 2024.

_____
United States District Judge