**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

INTERNATIONAL CONSTRUCTION
PRODUCTS LLC,

        Plaintiff,

    v.

CATERPILLAR INC., et al,

        Defendants.

Civil Action No. 15-108-RGA

## MEMORANDUM OPINION

Matthew D. Stachel, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, DE; William A. Isaacson, Jessica E. Phillips, Amy J. Mauser, David E. Cole, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, DC,

    Attorneys for Plaintiff.

David J. Baldwin, Peter C. McGivney, Periann Doko, BERGER MCDERMOTT LLP, Wilmington, DE; Joseph A. Ostoyich, William Lavery, Steve Nickelsburg, Danielle Morello, CLIFFORD CHANCE LLP, Washington, DC; Paul C. Cuomo, Heather Souder Choi, Jeffrey H. Wood, Dorothea R. Allocca, Natalie Cardenas, BAKER BOTTS LLP, Washington, DC; George W. Hicks, Jr., KIRKLAND & ELLIS LLP, Washington, DC,

    Attorneys for Defendant Caterpillar.

March 31, 2025

1

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff International Construction Products LLC ("ICP") filed a complaint against Defendant Caterpillar, Inc. and other Defendants on January 29, 2015, alleging Caterpillar violated antitrust laws and tortiously interfered with ICP's contract with a third party, IronPlanet. (D.I. 1). The case proceeded with motion practice, resulting in ICP filing three amended complaints and all Defendants other than Caterpillar being eliminated from the case. The case ultimately proceeded to an eight-day jury trial, held in April 2024. Two issues were tried: an antitrust claim and a tortious interference with contract claim. (D.I. 756). The jury found for Caterpillar on the antitrust claim and found for ICP on the tortious interference with contract claim, awarding ICP damages of $100,000,000. (*Id.*).

The facts can be summarized as follows. ICP and Caterpillar are both in the business of selling heavy construction equipment. (D.I. 246 ¶ 1). Caterpillar owns a 30% stake in, and has veto and strike rights in, Caterpillar Auction Services ("Cat Auction"). (D.I. 777 at 5). In early 2014, Cat Auction was in talks to negotiate a merger with IronPlanet, an e-commerce platform for selling used construction equipment. (D.I. 246 ¶ 85). Around the same time, ICP entered into a contract with IronPlanet, where IronPlanet was to host a "store" for ICP on its platform for ICP to sell new construction equipment made by Lonking, a Chinese-based heavy construction equipment manufacturer. (*Id.* ¶¶ 65, 69). ICP's IronPlanet store launched on March 3, 2014, and, after about a month, IronPlanet removed the store and terminated the contract. (*Id.* ¶¶ 73, 151–52). ICP alleges that Caterpillar pressured IronPlanet to terminate its contract with ICP by threatening to call off the merger with Cat Auction. (*Id.* ¶ 3).

2

During the trial, Caterpillar moved for judgment as a matter of law. (D.I. 734). I took the motion under advisement. (Tr. 1623:17–19).[1] After the trial, Caterpillar filed a renewed motion for judgment as a matter of law and, in the alternative, a motion for a new trial. (D.I. 768). ICP filed a motion for a new trial and a motion to alter or amend the judgment. (D.I. 770, D.I. 772). I have considered the parties' briefing. (D.I. 735, 736, 737, 769, 771, 773, 776, 777, 778, 779, 780, 781). For the reasons set forth below, Caterpillar's motion for judgment as a matter of law (D.I. 734) is DISMISSED as moot; Caterpillar's renewed motion for judgment as a matter of law and, in the alternative, motion for a new trial (D.I. 768) is GRANTED in part and DENIED in part; ICP's motion for a new trial (D.I. 770) is DENIED; and ICP's motion to alter or amend the judgment (D.I. 772) is DISMISSED as moot in part and DENIED in part.

## I.    LEGAL STANDARD

### A.  Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. FED. R. CIV. P. 50(a)(1). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the

---

[1] The trial transcript is consecutively numbered. (*See* D.I. 783, 784, 785, 786, 787, 788, 789, 790). Citations to it are in the form "Tr. ___."

evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). The Court "must not determine credibility of witnesses, and must not substitute its choice for that of the jury between conflicting elements in the evidence." *Perkin-Elmer*, 732 F.2d at 893. Rather, the Court must determine whether the evidence supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party.").

Where the moving party bears the burden of proof, the Third Circuit applies a different standard. This standard "'requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect.'" *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959)). The Court "'must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.'" *Id.* at 1171 (quoting *Mihalchak*, 266 F.2d at 877).

**B. Motion for New Trial**

Federal Rule of Civil Procedure 59(a)(1)(A) provides:

The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . .

4

Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584–85 (D.N.J. 1997) (citations omitted).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing district court's grant or denial of new trial motion under the "abuse of discretion" standard). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law—in that the Court need not view the evidence in the light most favorable to the verdict winner—a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352–53.

## II.    DISCUSSION

### A. Caterpillar's Motion

#### 1. Judgment As a Matter of Law

During trial, Caterpillar moved for judgment as a matter of law ("JMOL") on both claims, which I took under advisement. (D.I. 734; Tr. 1623:17–19). Both claims went to the jury. The jury found for Caterpillar on the antitrust claim and found for ICP on the tortious interference claim. (D.I. 756). The motion as to the antitrust claim is thus moot. *See* FED. R. CIV. P. 50 advisory committee's note to 1991 amendment ("[A] jury verdict for the moving party

5

moots the issue [moved for on JMOL].").  Caterpillar filed a renewed motion for JMOL as to the tortious interference with contract claim.  (D.I. 768).  Caterpillar's motion will be considered to the extent it properly preserved the issues in its original motion for JMOL.  *See Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1172–73 (3d Cir. 1993) ("A motion for judgment as a matter of law pursuant to Rule 50(b) must be preceded by a Rule 50(a) motion sufficiently specific to afford the party against whom the motion is directed with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient.").

     Caterpillar moves for JMOL on both liability and damages for the tortious interference with contract claim.  (D.I. 769 at 1–2).

### a.  Caterpillar's Liability

     Caterpillar argues no reasonable jury could have found it liable for tortious interference with contract because ICP failed to show that (1) IronPlanet breached the ICP-IronPlanet contract and (2) Caterpillar intentionally and improperly induced IronPlanet to breach via pressure or threat, as required by Illinois law.[2]  (*Id.* at 4).

     First, Caterpillar argues ICP did not show there was a breach, pointing out that ICP never sued IronPlanet for breach of contract, and that IronPlanet never had a chance to defend its decision to terminate its contract with ICP.  (D.I. 769 at 4).

     ICP argues IronPlanet's termination of the online store was a total breach of contract, and that it need not have filed a lawsuit against IronPlanet to prove breach.  (*Id.*).  ICP argues IronPlanet's President of Americas, Jeff Jeter, admitted the contractual conditions to lawfully

---

[2] The parties agree that Illinois law governs the tortious interference with contract claim.  (D.I. 689 at 1).

6

terminate the contract were not met, and that Jeter never said IronPlanet's conduct was not a breach. (*Id.*).

ICP presented sufficient evidence that IronPlanet breached its contract with ICP. Caterpillar cites no authority for the proposition that ICP was required to sue IronPlanet for breach to prove there was, in fact, a breach; I strongly doubt such authority exists. The jury instructions listed the elements that ICP had to prove by a preponderance of the evidence to win on its tortious interference claim, including "that IronPlanet actually breached its contract with ICP as a result of Caterpillar's wrongful conduct." (Tr. 1872:16–18). By rendering a verdict in ICP's favor, the jury found that ICP proved breach by a preponderance of the evidence. ICP points to evidence that IronPlanet removed the ICP store from its website and terminated the agreement; that evidence combined with testimony from IronPlanet's Jeter admitting the conditions for lawfully terminating the contract were not met overwhelmingly proved breach. (D.I. 777 at 2; Tr. 479:8–480:17). The jury could reasonably conclude that IronPlanet breached.

Second, Caterpillar argues that ICP failed to produce any evidence of Caterpillar threatening IronPlanet. (D.I. 769 at 6). I think Caterpillar has not met its burden to show the jury's decision finding it liable for tortious interference with contract should be set aside. Thus, it is not entitled to judgment as a matter of law on liability.

Caterpillar argues ICP offered only one email from Cat Auction to IronPlanet, which, in a related case, the Eleventh Circuit held was not a threat. (*Id.* at 6–7). Caterpillar argues that, in dismissing ICP's tortious interference claim against Cat Auction, I already held that communications from Cat Auction to IronPlanet were not threats. (*Id.*).

I did not rule that emails from Cat Auction to IronPlanet "were not a threat," as argued by Caterpillar. (*Id.* at 6, citing D.I. 292 at 6–8). I ruled that any threats in those communications

7

were not attributable to Cat Auction. (D.I. 292 at 6–8). There is a difference. I made no ruling on whether the communications contained a threat at all, or whether any purported threat came from Caterpillar. (*Id.*). Indeed, I noted that ICP's Third Amended Complaint describes the purported threat in one of the emails as delivered "on behalf of Caterpillar and its dealers," not Cat Auction. (*Id.* at 6). I made no ruling on whether those communications conveyed a threat on behalf of Caterpillar, and I later ruled that there was a genuine issue of material fact for a jury to decide on whether Caterpillar induced IronPlanet to breach its contract with ICP. (D.I. 456 at 44).

The decisions from the Northern District of Florida and the Eleventh Circuit do not preclude a jury from finding Caterpillar tortiously interfered with the ICP-IronPlanet contract. In a related case, the Northern District of Florida, later affirmed by the Eleventh Circuit, granted summary judgment for the defendants, none of which were Caterpillar, holding no reasonable jury could find tortious interference with contract. *Int'l Constr. Prods., LLC v. Ring Power Corp.*, 2021 WL 6755717, at *11–12 (N.D. Fla. Dec. 23, 2021), *aff'd*, 2023 WL 7127515, at *12 (11th Cir. Oct. 30, 2023). As I explained in a previous opinion, the issues in that case were different from the issues here, and did not prevent me from rendering my own decision on summary judgment in this case. (D.I. 456 at 24, 44). Caterpillar makes no specific arguments that a doctrine, such as collateral estoppel, renders JMOL appropriate in light of another court's decision. Indeed, I previously determined that collateral estoppel did not apply to prevent me from deciding summary judgment on ICP's tortious interference claim in this case. (*Id.* at 44). Caterpillar primarily points to those two opinions to show that one email from Cat Auction to IronPlanet was not a threat. (D.I. 769 at 7). But the jury was presented with much more evidence than just one email. (*See* D.I. 777 at 5–7).

8

Caterpillar argues that the only communication between Caterpillar and IronPlanet that could possibly be a threat is "hearsay-upon-hearsay" that was taken out of context. (D.I. 769 at 7). ICP's founder, Tim Frank, testified that he spoke with IronPlanet's President of Americas, Jeff Jeter, who told him that someone at Caterpillar "pressured IronPlanet to terminate its relationship with ICP by withholding used equipment from IronPlanet." (*Id.*). Caterpillar revisits an argument it made in a pre-trial motion in *limine*, arguing the testimony should not have been admitted under the "in furtherance of a conspiracy" hearsay exception. (*Id.*). Caterpillar argues that the jury found there was no conspiracy and that this one piece of evidence cannot be enough to sustain the verdict. (*Id.*). Caterpillar points to testimony from IronPlanet's CEO, Greg Owens, who testified that it was his decision to end the ICP contract, and he did so because the contract did not provide enough value to IronPlanet. (*Id.* at 7–8).

Contrary to Caterpillar's arguments, Frank's testimony is not the only piece of evidence upon which ICP relies. ICP relies on email threads and testimony from several individuals. (D.I. 777 at 5–7). Regardless, for the same reasons I previously set forth at some length (D.I. 704), I think the testimony was properly admitted. The fact that the jury found that Caterpillar did not have an agreement with any of its three independent dealers "to pressure or threaten IronPlanet so that IronPlanet would terminate its relationship with ICP" (D.I. 749 at 1) is of no moment. "[T]he admission of testimony under the co-conspirator exception to the hearsay rule is not rendered retroactively improper by subsequent acquittal of the alleged co-conspirator." *United States v. Carroll*, 860 F.2d 500, 506 (1st Cir. 1988) (internal quotations and citation omitted).

ICP points to various pieces of evidence and testimony to show Caterpillar induced IronPlanet to breach. (D.I. 777 at 5–7). This includes:

- An email from a Caterpillar employee to a Cat Auction employee with a link to an article about the ICP-IronPlanet contract, the Caterpillar employee writing in an email three days later, "I came across this article and told the 'Carbon negotiating team' our deal is dead, if what I was reading is true." (JTX-38; JTX-41 at 1–2). The Cat Auction employee shared the article with another Cat Auction employee, writing, "We are greatly concerned over this development" and "[Caterpillar] has indicated this would kill the deal." (PTX-153; PTX-3 at 281–82).

- Caterpillar employees internally describing the ICP-IronPlanet contract as a "show stopper" and a "dead deal before arrival" for the merger (JTX-41) and testifying that they wanted IronPlanet to cancel its deal with ICP in order to proceed with merger discussions. (*See* Tr. 711:16–24, 714:17–20).

- A Cat Auction employee writing, "CAT is concerned about the ICP deal . . . and would like [Cat Auction] to figure out the [IronPlanet] plan before going further but without killing the deal now." (PTX-160 at 1).

- An email from a Caterpillar employee to an investment banker writing, "The Recent announcement regarding [IronPlanet's] distribution of new Chinese machines has a material impact on our strategy going forward." (Tr. 1281:7–12).

- An email from a Cat Auction employee to the IronPlanet CEO stating, "Caterpillar and CAT dealers would have significant concerns" about "any arrangement where IronPlanet is providing auction services for new equipment for a Caterpillar competitor." (PTX-164 at 1).

- Testimony from an IronPlanet employee that he knew of Caterpillar's concerns about the ICP-IronPlanet contract. (Tr. 485:20–486:3).

10

- Testimony from a Caterpillar employee that, for the merger to have proceeded, "IronPlanet would have expressed to [Caterpillar] that . . . [IronPlanet would not] be selling new equipment." (Tr. 1461:9–10).

- Testimony from ICP founder Frank that, on a phone call with IronPlanet employee Jeter, Jeter told Frank that Caterpillar put pressure on IronPlanet to end the ICP contract. (Tr. 766:10–20). That same day, Frank emailed Jeter saying, "[I]f [Caterpillar] is going to make you pull the plug on us, I would like to know as soon as possible to make other arrangements." (PTX-187; Tr. 767:23–768:3). Frank testified that Jeter never contradicted Frank's email. (Tr. 768:4–6).

- Caterpillar documents indicating the high value of the potential Cat Auction-IronPlanet merger. (D.I. 777 at 7).

I think ICP offered sufficient evidence for a reasonable jury to find that Caterpillar wrongfully caused the breach. A jury could reasonably interpret the above communications as constituting a threat or pressure; a jury could thus reasonably find Caterpillar liable for tortious interference with contract.

Caterpillar's remaining arguments boil down to the credibility of the witnesses. It is not the court's job to weigh evidence and the credibility of witnesses after a jury has rendered a verdict. *Perkin-Elmer*, 732 F.2d at 893. Viewing all the evidence in the light most favorable to ICP, I think Caterpillar has not met its high burden to show it is entitled to JMOL on liability.

### b. Damages

Caterpillar moves for JMOL as to the damages. (D.I. 769 at 9). Caterpillar argues that the jury's award of $100,000,000 is improper for four reasons. (*Id.*).

First, Caterpillar argues the award is impermissibly speculative under the Illinois new business rule. (*Id.*). ICP argues the new business rule is not recognized under Illinois law.[3] (D.I. 777 at 13).

Illinois law requires that the plaintiff prove damages with reasonable certainty. *Ivey v. Transunion Rental Screening Sols.*, 215 N.E.3d 871, 877 (Ill. 2022). Caterpillar argues that Illinois law—the so-called "new business rule"—prohibits awarding damages to new companies for lost profits. (D.I. 769 at 9). That is not Illinois law. The Illinois Supreme Court recently resolved any uncertainty on that subject. "The new business rule is simply an application of the general principle that a plaintiff alleging breach of contract bears the burden to establish damages with reasonably certainty." *Ivey*, 215 N.E.3d at 878. New businesses may recover lost profits, but they may have a more difficult time proffering evidence "to support an inference of definite profits grounded upon a reasonably sure basis of facts." *Id.* (quoting *Lowrie v. Castle*, 113 N.E. 206, 210 (Mass. 1916)).

One way a new business may sufficiently show "definite profits" is through "evidence of revenues of a similar product or a similar business in a similar market." *See Ivey*, 215 N.E.3d at 880. I agree with ICP that evidence of revenues of similar products in a similar market may be sufficient for a new business to prove damages, but that such evidence is not the only way such damages may be proved. Indeed, "No factors guide the analysis; rather, it is a fact-intensive inquiry that differs from case to case." *Id.* at 878–79.

---

[3] ICP argues the rule is not recognized under either North Carolina or Illinois law. (D.I. 777 at 13). The parties agreed Illinois law applies to the tortious interference claim. (D.I. 689 at 1). ICP did not offer an argument that any other law applies. I do not see any reason to consider the requirements of North Carolina law.

A "fact-intensive" analysis does not support the damages verdict. ICP has not proven damages with reasonable certainty. ICP did not show evidence of revenues of similar products in a similar market, nor did it prove damages in some other non-speculative way.

ICP argues it showed damages with reasonable certainty through business projections and models offered by its employees and corroborated by an expert. (D.I. 777 at 10–13). At the time of the tortious interference with contract, ICP was a start-up company with one sale of one piece of equipment through the IronPlanet marketing channel. (Tr. 835:22–17, 909:21–910:9). Online sales of new heavy construction equipment were unprecedented. (Tr. 319:6–7; 726:18–727:3). IronPlanet had little to no experience selling new, as opposed to used, equipment on its platform. (Tr. 892:7–25). The manufacturer, Lonking, had no history in the North American market. (*See* Tr. 565:19–22, 656:6–20, 672:20–25). ICP's founder had no experience selling Lonking equipment or selling equipment online. (Tr. 961:18–23). With this understanding, I think projections and models for a new company with a new business model selling a manufacturing line with no history were not reasonably certain.

ICP argues that its founder, Frank, who developed the projections, has years of industry experience, pointing to the various companies in the heavy equipment industry that Frank has helped grow. (D.I. 777 at 11). ICP offers similar arguments for Wesley Lee, who helped Frank develop the projections. (*Id.*). I cast no doubt on either witness' prowess in the industry. I do not think, however, that the projections for a newly formed business with no track record in a new market (selling online, as opposed to through dealers) equate to "reasonably certain" lost profits. "Experts may not guess the amount of potential lost profits where there is no historical data to demonstrate their likelihood. . . . Illinois courts have long rejected the use of speculative, inaccurate or false projections of income in the valuation of a business." *Ivey*, 215 N.E.3d at

878.  The projections here, estimating earnings before interest and tax of hundreds of millions of

dollars five years into the future, made before ICP had sold a single Lonking product, can only

be characterized as speculative.[4]

ICP argues its industry expert, Rhoda, who has viewed hundreds of projections and

created dozens himself, "testified that ICP was more likely than not to achieve the projections."

(D.I. 777 at 12).  I do not think "reasonably certain" profits are shown by an expert opining that

it was "more likely than not" that ICP would meet Frank's projections, which themselves are not

reasonably certain.

Caterpillar argues ICP failed to show sufficient evidence of similar products in a similar

market to prove damages.  (D.I. 769 at 9).  ICP argues that Caterpillar did not raise that argument

in its motion for JMOL during trial and has thus waived it.  (D.I. 777 at 14).  I disagree.  As I

explain above, that is one way to prove damages with reasonable certainty.  Caterpillar cited *Ivey*

and generally argued that ICP failed to prove damages with reasonable certainty in its original

JMOL.  (D.I. 735 at 19).  I think Caterpillar properly preserved the issue.

ICP argues that it met the reasonable certainty standard by showing sufficient evidence of

similar products in a similar market, at least in part because its experts have "extensive

experience selling nearly identical products in nearly identical markets."  (D.I. 777 at 14).  ICP

argues there was a preexisting market for the new heavy construction equipment it was going to

sell; the only "new" part of ICP's model was selling the equipment online, as opposed to through

a dealer.  (*Id.* at 15).  ICP argues that any differences between its machines and those on the

---

[4] There was no testimony that any company anywhere in the world had ever successfully run a
business selling new heavy construction equipment online before ICP tried, and no testimony
that anyone has done so in the ten years from 2014 to the time of the trial.  (*See* Tr. 319:6–7;
726:18–727:3; 876:19–877:5; 899:17–20; 1651:10–12).

market, and thus whether its products were similar to those in the existing market, was a factual issue for the jury to decide. (*Id.*).

ICP has not shown revenues of similar products in a similar market. Though there certainly was a market for heavy construction machinery, there was much evidence that selling new machinery online, as ICP planned to do through IronPlanet, was a new endeavor. (*See, e.g.,* Tr. 319:6–7; 726:18–727:3; 876:19–877:5; 899:17–20; 1651:10–12). Indeed, ICP's director of marketing testified, "The ability to sell new equipment using an all online platform . . . was a new and disruptive approach to selling construction equipment." (Tr. 1651:10–12). Regardless, ICP seems only to argue that its experts had experience in such similar markets, not that it presented evidence of revenues of similar products in similar markets. (D.I. 777 at 14). I therefore do not think ICP has met its burden to prove damages with reasonable certainty in its attempt to show sales of similar products in similar markets.

Second, Caterpillar argues all of ICP's damages testimony was based on Frank's lay testimony about speculative projections, which is insufficient to support the award. (D.I. 769 at 12). Third, Caterpillar argues that $100,000,000 has no basis in the evidence because the number "came out of thin air." (*Id.*). Both of those arguments are about the sufficiency of evidence to support a reasonably certain award. As I explain above, I think ICP failed to show damages with reasonable certainty.

Fourth, Caterpillar argues ICP failed to mitigate its damages and, indeed, enhanced its damages "by refusing to continue doing business with IronPlanet" when ICP refused a replacement sales channel offered by IronPlanet. (*Id.*). Since I think ICP failed to offer sufficient evidence to render its damages reasonably certain, I do not here address Caterpillar's argument on whether ICP failed to mitigate.

15

Caterpillar's motion for renewed JMOL is granted with respect to the damages amount. The jury's award is vacated.

### 2. New Trial

Caterpillar argues that, should I not grant its motion for JMOL, then I should grant a new trial for three reasons: (1) the verdict is "infected by an erroneous punitive damages instruction" and ICP's mentions in closing argument of Caterpillar's deep pockets, (2) the verdict and award of $100,000,000 is manifestly unjust, and (3) I erroneously did not instruct the jury on the duty to mitigate damages. (D.I. 769 at 18).

### a. Caterpillar's Liability

Only the first two arguments are relevant to Caterpillar's request for a new trial as to liability.

As to the first argument, that I erroneously gave a punitive damages instruction, I overruled Caterpillar's objection at trial because Caterpillar did not raise it in its original motion for JMOL. (*Id.* at 19). Caterpillar argues that it did in fact raise the issue when it "moved for judgment on the tortious interference claim in its entirety on the basis that ICP had not even proven wrongful and unjustifiable conduct." (*Id.* (citing D.I. 735 at 16–17)). An award of punitive damages requires reprehensible conduct. (*Id.*). Caterpillar argues since it moved for JMOL on the lesser conduct, it moved for JMOL on the reprehensible conduct. (*Id.*).

I do not think a new trial as to Caterpillar's liability on the tortious interference claim is warranted. There was no error in giving the punitive damages instruction. The jury did not award punitive damages, so any purported error in giving the instruction did not prejudice Caterpillar. (D.I. 749 at 5); *see Gaszak v. Zayre of Ill., Inc.*, 305 N.E.2d 704, 711 (Ill. App. Ct. 1972). Caterpillar argues that "the punitive damages instruction allowed ICP's counsel to exhort

16

the jury to punish Caterpillar" when ICP's counsel said in closings that "$150 million is not a lot of money to Caterpillar." (D.I. 769 at 19). Caterpillar did not object to these statements during closings and has thus waived its objection. *See Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 399 (3d Cir. 2016). And, as I explained at trial, I also think Caterpillar failed to properly preserve its objection by not specifically raising it in its original JMOL motion. *Lightning Lube*, 4 F.3d at 1173.

As for its second argument, that the verdict is "manifestly unjust," Caterpillar repeats the arguments it gives for JMOL. (D.I. 769 at 20). For the same reasons I give for not granting JMOL, I do not find Caterpillar's arguments convincing when offered in support of the motion for a new trial.

Caterpillar's motion for a new trial on liability for the tortious interference claim is denied.

### b. Damages

For the third argument in support of the motion for a new trial, Caterpillar argues, "Without a showing of mitigation, no reasonable jury could rely on ICP's damages evidence." (D.I. 769 at 18).

On this issue, although I am granting JMOL in Caterpillar's favor, I "must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if [my JMOL] judgment is later vacated or reversed." FED. R. CIV. P. 50(c)(1). I do not conditionally grant a new trial on damages, because I find Caterpillar's argument about a lack of mitigation instruction unconvincing.

There was no error in not giving the jury a "duty to mitigate" instruction. Caterpillar "bears the burden of proof as to the extent of nonmitigation." *Mayster v. Santacruz*, 163 N.E.3d

17

246, 256 (Ill. App. Ct. 2020). Caterpillar points only to ICP rejecting a replacement contract with IronPlanet to sell four pieces of Lonking equipment ICP already had in its possession in North America. (*Id.* at 17–18; DTX-586). Caterpillar points to no other evidence that shows ICP failed to mitigate. ICP sold the four pieces of equipment it would have otherwise attempted to sell through IronPlanet. ICP's damages expert subtracted the amount gained in those sales from his final proposed damages number. (Tr. 835:11–19, 1627:4–11). Caterpillar offered no evidence that ICP sold those machines at any greater loss through a third party than it would have with IronPlanet. (Tr. 1626:2–7). There was no error in not giving a duty to mitigate instruction.

As for Caterpillar's argument that the award is "manifestly unjust" and "unsupported by the record," (D.I. 768 at 20), if the Third Circuit vacates or reverses my ruling on JMOL, it will be because the damages are reasonably certain and sufficiently supported by the record. I would thus not grant a new trial on damages.

### B. ICP's Motion for New Trial

ICP moves for a new trial with respect to its antitrust claim. (D.I. 771 at 1). ICP cites two errors that warrant a new trial: (1) the "refusal to deal" jury instruction and (2) my answer to a jury question. (*Id.*).

First, ICP takes issue with one part of the jury instructions; namely, that I declined to include a phrase suggested by ICP. (D.I. 771 at 2). The relevant parts of the jury instructions are as follows, with ICP's request (that was not included in the final jury instructions) underlined:

> ICP alleges that Caterpillar, Ring Power, Thompson, and/or Ziegler entered into an agreement to threaten IronPlanet so that IronPlanet would refuse to deal with ICP through the hosted store agreement. Caterpillar claims that IronPlanet remained willing to conduct business with ICP, even after the termination of the hosted store agreement.

18

> In order to find ICP suffered an antitrust injury, ICP must prove that Caterpillar, Ring Power, Thompson Tractor, and/or Ziegler agreed to pressure or to threaten IronPlanet to cut off ICP's access to the online marketplace by causing IronPlanet to refuse to deal with ICP through the hosted store agreement.
>
> If ICP was substantially disadvantaged from competing in the market by IronPlanet's actions, then IronPlanet refused to deal with ICP. If ICP had an active avenue of competition with IronPlanet so that it was not disadvantaged that it chose to voluntarily foreclose, ICP cannot succeed on its Sherman Act claim. If, after considering all of the evidence, you conclude that ICP failed to prove that IronPlanet refused to deal with ICP, then you must find against ICP and in favor of Caterpillar on ICP's Sherman Act claim.

(Tr. 1867:4–1868:1).

The jury instruction was not in error and does not warrant a new trial.

Question one on the verdict form asked the jury, "Did ICP prove, by a preponderance of the evidence, that Caterpillar entered into an agreement with [any of three Caterpillar dealers] to pressure or threaten IronPlanet so that IronPlanet would terminate its relationship with ICP?" (D.I. 749 at 1). The jury checked "NO," and was thus instructed to skip the rest of the antitrust claim questions. (*Id.*). Caterpillar argues that the jury did not answer any questions about the refusal to deal and thus any error in the refusal-to-deal instruction is harmless. (D.I. 776 at 1). ICP argues that the refusal to deal instruction was relevant to Question one. (D.I. 779 at 1). The instructions create a link between entering into an agreement and refusal to deal when they say, "ICP alleges that Caterpillar . . . entered into an agreement to threaten IronPlanet so that IronPlanet would refuse to deal with ICP." (Tr.1867:4–7). The first question on the verdict form asks whether Caterpillar entered into an "agreement" with other entities "to pressure or threaten IronPlanet so that IronPlanet would terminate its relationship with ICP." Thus, while the jury instructions connect "agreement" and "refusal to deal," the verdict form uses plain English to ask, did Caterpillar and others enter into an agreement to "pressure or threaten" IronPlanet so

19

that IronPlanet would end the relationship with ICP. I think the jury's answer to that question makes any error with any part of the "refusal to deal" instruction harmless.

In any event, it was not error to reject ICP's proposed additional language. ICP argues that the jury may erroneously think that "any 'active avenue of competition'—however *de minimis* and regardless of the effect on ICP's business—might suffice." (D.I. 771 at 3). But ICP cites no authority that that is the law. (D.I. 771, 779). Caterpillar cites authority that the jury instructions, as written, correctly reflect the law. *See Untracht v. Fikri*, 454 F. Supp. 2d 289, 310 (W.D. Pa. 2006), *aff'd*, 249 F. App'x 268 (3d Cir. 2007) ("Plaintiff was not, in fact, shut out from competing in the market by Defendants' actions. Rather, Plaintiff had an active avenue of competition . . . that he chose to voluntarily foreclose. The Court finds that voluntary foreclosure of one's own opportunities for competition is not the type of antitrust injury for which the antitrust laws were designed to provide redress.").

Even if ICP were correct that only active avenues of competition that do not substantially disadvantage ICP would suffice to defeat ICP's antitrust claim, ICP's suggestion was unnecessarily repetitive because "competition" is explained in the preceding sentence of the jury instructions. The instructions said, "If ICP was substantially disadvantaged from competing in the market by IronPlanet's actions, then IronPlanet refused to deal with ICP." (Tr. 1867:17–19). It was not necessary to repeat "disadvantaged" in the following sentence: "If ICP had an active avenue of competition with IronPlanet that it chose to voluntarily foreclose, ICP cannot succeed on the Sherman Act claim." (Tr. 1867:19–22). That sentence must be read in context of the preceding sentence, requiring a substantial disadvantage in "competition" for the jury to find that IronPlanet refused to deal with ICP. The first sentence defines "refusal to deal" as ICP being substantially disadvantaged from "competing." The next sentence explains that ICP loses on its

20

claim if it forgoes an active avenue of "competition." Read in context with the preceding sentence, for ICP to lose on its claim, any avenue of "competition" forgone by ICP must have been one that did not render it substantially disadvantaged. Jury instructions must be read as a whole. *United States v. Flores*, 454 F.3d 149, 157 (3d Cir. 2006). I do not think these instructions, taken as a whole, inaccurately reflect the law or are so confusing that they require a new trial to prevent a miscarriage of justice. *Id.*; *Williamson*, 926 F.2d at 1344.

Second, ICP takes issue with my answer to a jury question. (*Id.* at 4). During deliberations, the jury asked, "[P]lease clarify if 'active avenue of competition' refers only to the hosted store or does it include the listing agreement?" (Tr. 1979:2–5). After discussing the question with the parties, I answered, "It is up to the jury to determine whether ICP had an active avenue of competition with the listing agreement or otherwise." (Tr. 1992:23–25). ICP argues, similar to its first argument, that the answer should have included "where ICP was not substantially disadvantaged from competing in the market by IronPlanet" at the end of the answer. (D.I. 771 at 4). Caterpillar advances substantially the same arguments. (D.I. 776 at 9). For the same reasons I give above with respect to the jury instructions, I do not think the response to the jury's question was incorrect and I thus do not think a new trial is warranted.

### C. ICP's Motion to Alter the Judgment

ICP also moves to alter or amend the judgment. (D.I. 772). ICP requests I require Caterpillar to pay the $100,000,000 in damages award plus prejudgment interest, and declare ICP the prevailing party entitled to costs and post-judgment interest. (D.I. 773 at 1).

As explained above, I have vacated the jury's award of $100,000,000. ICP's request that I require Caterpillar to pay that amount in damages plus prejudgment interest is thus dismissed as moot.

Since I have vacated the jury's award of damages, I do not think ICP should now be declared the prevailing party. Generally, "[T]he standard for determining prevailing party status is whether plaintiff achieved some of the benefit sought by the party bringing the suit." *Tyler v. O'Neill*, 112 F. App'x 158, 161 (3d Cir. 2004) (cleaned up). "In applying this standard, it is important to identify the relief plaintiff sought and, when relevant, the legal theories upon which relief was based." *Id.* Though Caterpillar is liable for tortious interference with contract, I am vacating the damages award. At this point, ICP has not been awarded any relief. ICP thus cannot now be declared the prevailing party, and that part of its motion is denied based on the present record.

## III. CONCLUSION

An appropriate order will issue.